UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:21-CR-58 |
| v. ) | Judges Atchley/Lee |
| ) | |
| MARK ALAN DEAKINS ) | |

## RESPONSE TO SUPPLEMENT TO MOTION TO SUPPRESS

The defendant filed a supplement to his motion to suppress evidence seized from his van. (Doc. 72.) In the supplement, the defendant claims that the Court may not rely on the automobile exception to the warrant requirement for two reasons. First, he claims that because he was sleeping in the van, the van is more like a residence and therefore the lesser expectation of privacy for a motor vehicle is inapplicable. Second, he claims the government failed to prove that the van was readily mobile. The government disagrees with the defendant's arguments and respectfully asks the Court to deny the defendant's motion.

## FACTS

At a minimum, the following facts may be adduced from the hearing on the motion to suppress. On June 3, 2021, the FBI executed a search warrant at the defendant's home in Chattanooga, Tennessee. The defendant was not present for the execution of the search warrant, but he and his van were present earlier that day. The defendant and his van traveled to Crossville, Tennessee on the same day, or very soon thereafter. It is reasonable to infer the defendant drove the van from Chattanooga to the Crossville area. Although we do not know the exact route the defendant and the van took, the distance is well over 60 miles. The defendant operated his van around the campground up until the day it was searched on June 7, 2021.

1

On June 7, 2021, law enforcement officials found the defendant at the campground in Crossville, Tennessee and, according to a photograph taken the next day, the defendant's van was parked in a storage building. In the photograph, the van appears to have been backed into the storage building and it appears to be parked on tires. According to the supplemental document filed by the defendant, the defendant told Landis that his van was overheating when he asked Landis to borrow his car. The government agrees the defendant told this to Landis, even though this fact was not elicited during the hearing. The evidence also showed that the defendant was sleeping in his van and had done so the evening prior to the search.

## ARGUMENT

**1.      Sleeping in the van does not undermine the automobile exception.**

The Supreme Court affirmed a warrantless search pursuant to the automobile exception involving a motor home. *California v. Carney,* 471 U.S. 386 (1985). The *Carney* dissent pointed out, to no avail, that a motor home could be the "equivalent of a hotel room, a vacation and retirement home, or a hunting and fishing cabin." *Id.* at 407. Still, as the majority noted, and notwithstanding that the motor home "possessed some, if not many of the attributes of a home," the motor home fell "clearly within the scope of the [automobile] exception…" *Id.* at 393. Here, the defendant's actual home (in Chattanooga) was the subject of the initial search warrant. His van, on the other hand, was where he was sleeping at night while the FBI searched for him. *See also United States v. Markham,* 844 F.2d 366, 369 (6th Cir. 1988) (holding automobile exception applies to the search of a motor home parked in a driveway.)

The Sixth Circuit specifically considered a case in which the defendant argued that his pickup truck ceased to be a vehicle because it had a camper top and because he "slept in his truck on occasion…" *United States v. Rommann,* No. 89-6042, 1990 WL 66823, at *2 (6th Cir. May

2

21, 1990.) The Court wrote, "[t]here can be no serious contention that a pickup truck being used regularly as a vehicle ceases to be a vehicle simply because it has a camper top. Although the defendant slept in his truck on occasion, this does not change the character of the vehicle any more than if the defendant was 'living' out of the back seat of a passenger vehicle." *Id* at *2. In short, just because the defendant was sleeping in his van does not convert his van into his residence and did not preclude the use of the automobile exception to search his van without a warrant.

    **2.    Evidence showed the van was readily mobile.**

The evidence proved the defendant's van was readily mobile. It is reasonable to infer the defendant drove the van to the Crossville area three to four days before it was searched. Landis testified that the defendant was driving the van the first few days he was there, but he had borrowed his car on the day the van was searched. The van appears to have been backed into the building where it was found. There is no event in evidence or that may be inferred from the evidence that would change the van from readily mobile to immobile. Even if the defendant was being truthful when he told Landis the van was overheating, this only helps *prove* mobility. In other words, an overheating vehicle is not an immobilized vehicle. That is, the defendant's van, whether it was overheating or not, was "obviously mobile by the turn of an ignition key. . ." *Carney,* at 393. Moreover, even if the van was overheating, it was readily repairable, and the exception still applies.

In the *Rommann* case cited above, the Sixth Circuit examined whether the automobile exception applies to the search of a vehicle that was "up on a jack with one wheel removed for repair of a flat tire." *See Rommann,* at *1-4. The district court had refused to apply the exception; the Sixth Circuit reversed. "We do not think the automobile exception to the warrant

3

requirement should turn on the condition of the vehicle or whether, as a practical matter, it could be spirited away from the police before a search could be completed. Considerations of factors of this nature would just add more uncertainty as to what is permitted and what is prohibited." *Id.* at *3. Indeed, courts have often reviewed searches pursuant to the automobile exception in situations involving vehicles with "a readily repairable problem," and have ratified these searches because the vehicles had "not lost [their] inherent mobility." *See, e.g., United States v. Mercado*, 307 F.3d 1226, 1227, 1229 (10th Cir. 2002) (stating that a van remained "readily mobile" when it would be repaired and operable the next morning); *United States v. Fields*, 456 F.3d 519, 523-24 (5th Cir. 2006) (affirming search of a crashed car); *United States v. Maggard*, No. 00-1146, 2000 WL 680394, at *1 (8th Cir. May 26, 2000) (unpublished disposition) (affirming the search of a pickup truck "stuck in a ditch."); *United States v. Short,* 2 F.4th 1076, 79-80, (8th Cir. 2021) (affirming search of vehicle with a flat tire). In sum, the evidence is compelling that the defendant's van was readily mobile and remained so even if it was overheating.

## CONCLUSION

The automobile exception applies even if the defendant was sleeping in his van. The evidence showed that the van was readily mobile and, even if the van was overheating, it was still readily mobile. The search of the defendant's van was legal, and for the foregoing reasons, the defendant's motion to suppress should be denied.

Respectfully Submitted,

FRANCIS M HAMILTON III
UNITED STATES ATTORNEY

SIGNATURES ON PAGE 5

4

Case 1:21-cr-00058-CEA-SKL   Document 74   Filed 11/21/22   Page 4 of 5   PageID #: 351

By: s/*James T. Brooks*
JAMES T. BROOKS, BPR #021822
Assistant United States Attorney
1110 Market Street, Suite 515
Chattanooga, Tennessee 37402
(423) 752-5140
james.brooks@usdoj.gov

*s/Steven S. Neff*
Steven S. Neff, BPR #GA 537187
Assistant United States Attorney
1110 Market Street, Suite 515
Chattanooga, Tennessee 37402
(423) 752-5140
steven.neff@usdoj.gov