UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-CR-058-CEA-SKL |
| | ) | |
| MARK ALAN DEAKINS, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Before the Court is a motion to suppress filed by Defendant Mark Alan Deakins ("Defendant") [Doc. 55]. Defendant seeks to suppress all evidence seized during a search of his van. Plaintiff United States of America ("Government") filed a response in opposition to the motion [Doc. 64]. An evidentiary hearing was held on the motion on November 10, 2022. Following the hearing, Defendant [Doc. 72] and the Government [Doc. 74] each filed supplemental briefs. The motion was referred for a report and recommendation by standing order pursuant to 28 U.S.C. § 636(b). This matter is now ripe. For the reasons addressed below, I find no constitutional violation occurred and I recommend that Defendant's motion to suppress be denied in its entirety.

## I. BACKGROUND

The Government called the following witnesses: FBI Special Agent Samuel Moore ("Agent Moore"), Jeff Landis ("Landis"), and Tennessee Highway Patrol ("THP") Officer Al Seitner ("Officer Seitner"). Agent Moore has worked for the FBI for 13 years, and for the past four years, his work has focused on crimes against children and human trafficking. He heads an FBI task force which focuses its efforts on these types of crimes. Officer Seitner has been a THP

officer for 12 years and a member of the FBI task force for three years. Landis, an acquaintance of Defendant's, was allowing Defendant to park and stay overnight in Defendant's van in an unfinished building that Landis owned. Defendant did not call any witnesses.

The Government entered the following exhibits into evidence: a photograph of the front interior of the van (Government's Exhibit 1), a photograph of the rear exterior of the van shown from its position inside Landis's building (Government's Exhibit 2), an inventory of items seized at the time of Defendant's arrest and from the disputed search of the van (Government's Exhibit 3), and a copy of the relevant arrest warrant and supporting affidavit (Government's Exhibit 4). Attached to Defendant's supplemental brief is a one-page excerpt from a "case agent report" completed the day of Defendant's arrest [Doc. 72-1]. Although this exhibit was not entered into evidence during the hearing, the supplemental brief states the Government does not object to the Court's consideration of the excerpt, and it has been considered as if entered into evidence during the hearing. The evidence presented during the hearing credibly establishes the following.

On May 27, 2021, Agent Moore was contacted by an officer with the Red Bank, Tennessee, Police Department ("RBPD"). The officer informed Agent Moore about a complaint filed against Defendant with the Lafayette, Georgia, Police Department ("LPD"). The complainant had given a ride home to a teenage boy, and the teenage boy left behind in her car a small bag containing a driver's license and a Tennessee Probation Identification Card with Defendant's information. The bag also contained thumb drives. The complainant reviewed the thumb drives and discovered they contained child sexual abuse material ("CSAM"), including videos depicting an adult male or males engaged in sex acts with juvenile males, and so she turned the thumb drives and the identification over to the LPD. Officers were able to identify one of the juveniles in the CSAM images, and they learned the CSAM related to an earlier case out of Red Bank, so they contacted

2

the RBPD. Soon after receiving this information, the RBPD contacted the FBI and turned over the materials provided by the complainant.[1]

Agent Moore reviewed the files on the thumb drives and discovered there were thousands of CSAM files. Agent Moore concluded many of the files, which were catalogued according to the name of each victim, were produced by Defendant. Also included were other pictures of the victims downloaded from social media and other online sources. Agent Moore confirmed that an individual matching Defendant's description appeared in a majority of the CSAM videos, nude and engaged in sex acts with juvenile males. Agent Moore reviewed the metadata of some of the CSAM files and determined they were produced on a Samsung phone.[2]

Based on the above and other information he gathered, Agent Moore obtained a search warrant for Defendant's home. Agent Moore also filed a criminal complaint against Defendant. On June 2, 2021, this Court issued a warrant for Defendant's arrest for violation of 18 U.S.C. § 2251, sexual exploitation of children.[3] On June 3, 2021, FBI officers went to Defendant's home and executed the search warrant. Defendant was not home, although a neighbor informed the officers that Defendant had left only moments earlier in Defendant's van.

---

[1] Agent Moore testified that prior to Defendant's arrest, he learned that Defendant's car and home had been broken into. Agent Moore did not know if the thumb drives and identification were stolen from Defendant during the break-ins, nor did he otherwise know how the teenage boy came to obtain them. He also did not know if any arrests resulted from the break-ins.

[2] Some of the CSAM images contained location metadata, which Agent Moore also reviewed. The criminal complaint states that the location metadata established the CSAM images were taken within 200 feet of Defendant's residence [Doc. 2].

[3] The complaint and supporting affidavit are in the record [Doc. 1 & Doc. 2] and were admitted as Government's Exhibit 4 during the hearing. In the motion to suppress, Defendant does not contest probable cause for his arrest or any aspect of the search warrant executed at his home.

During the search of Defendant's home, the officers did not find a Samsung cell phone, although they did find multiple other electronic media devices, including desktop computers, that contained additional CSAM files. Agent Moore testified Defendant's home was equipped with a Ring doorbell, which activated when they arrived at Defendant's home, indicating to Agent Moore that Defendant was alerted that law enforcement officers were at his home. Agent Moore also attempted to call Defendant, but was unsuccessful. Regardless, using information gleaned from an informant, Agent Moore learned Defendant might be found at the Deer Run RV Resort ("Deer Run"), located in Crossville, Tennessee. Agent Moore then contacted Trooper Seitner, whose jurisdiction included the Deer Run location, for assistance executing the arrest warrant.

On June 7, 2021, Trooper Seitner went to Deer Run. Trooper Seitner spoke first with a security guard, who informed Trooper Seitner that he knew Defendant but did not know of Defendant's whereabouts at that time. The security guard directed Trooper Seitner to Landis, who did maintenance at Deer Run and lived on property that was on the edge of Deer Run. Trooper Seitner located Landis, who confirmed that Defendant was parking his van inside an unfinished building on Landis's property and sleeping in the van. Landis intended the building to become a "barn-dominium," i.e., a barn or workshop with both residential and work spaces. At the time, however, the building had no permanent electricity or plumbing, though it did have a constructed frame and doors that locked from the inside.[4] Landis testified that he stored his maintenance tools and other belongings in the building. He would typically leave the building open during the day so he could retrieve tools to do his maintenance work.

---

[4] The building eventually got plumbing and a permanent electrical box by September 2022, when Landis moved in and began living there.

Defendant and Landis met in prison. Defendant had a history of doing electrical and plumbing jobs for Landis. Around the time of his arrest, Defendant had agreed to perform electrical and plumbing work on Landis's unfinished building and was possibly going to do other plumbing and electrical work for some of the 275 lot owners in Deer Run. When Defendant arrived at Deer Run a few days prior to June 7 (the night Defendant was arrested and his van was searched), he asked Landis if he could stay for a few days. Defendant told Landis that he thought the police were looking for him based on the cameras at his (Defendant's) house, but Defendant did not know why. Landis allowed Defendant to park his van in, and stay in, Landis's building.

During the three or four days he was there, Defendant slept in the parked van in the building, because there was nowhere else in the unfinished building to sleep. For most of his stay, Defendant drove his van. However, on the morning of June 7, Defendant asked to borrow Landis's car so that he could drive to Chattanooga and try to hire an attorney because his van was overheating.

Throughout Defendant's stay, Landis maintained control over the building. Landis explained Defendant did not have the authority to exclude Landis from the building during Defendant's stay, Landis did not need Defendant's permission to enter the building or use the building, Defendant did not have a key to the building, and at one point Landis went into the building to retrieve rakes and tools for work he was doing at Deer Run. Landis did not expect Defendant's stay to be prolonged.

Landis spoke to Trooper Seitner on June 7, after Trooper Seitner was directed to Landis by the security guard. Landis testified that he understood Seitner was there to arrest Defendant. Landis immediately offered to take Trooper Seitner to his building, but Trooper Seitner informed Landis they would wait for other officers to arrive. Landis and Trooper Seitner then went to a

5

store on the Deer Run property. Landis testified that he gave express permission to Trooper Seitner to enter the building where Defendant's van was parked while they were at the store [Doc. 77 at Page ID # 413-14].[5] Other officers began to arrive and congregate in the store. At some point, Landis received a text message from Defendant indicating that Defendant had returned with Landis's car. Thereafter, and after sunset on the evening of June 7, Landis and the officers took golf carts down to Landis's building so the officers could arrest Defendant. Landis dropped the officers off on an access road near the building, and the officers proceeded on foot until they found Defendant, who was walking on the access road.

Trooper Seitner testified that FBI Special Agent Ric Fagan ("Agent Fagan") was in front and first spotted Defendant. Agent Fagan ordered Defendant to get on the ground. Defendant initially refused, but the officers were eventually able to subdue, handcuff, and arrest him. Trooper Seitner and the other officers then moved Defendant into an upright standing position, and one of the officers read Defendant his Miranda rights. At that time, the group was approximately 25 yards from Landis's building, the doors to the building were closed, and the van was not visible.

Defendant was searched immediately after being arrested. During the hearing, the Government stipulated that a Samsung phone was found on Defendant's person immediately following his arrest. Trooper Seitner consistently testified that he heard Agent Fagan ask Defendant if he had another cell phone, and Defendant responded that there was a cell phone in his van. Officers also recovered a set of keys from Defendant's person.

With Landis's permission, the officers entered the building. They observed the van, and through its windshield, they readily observed in plain view a box for a Samsung cell phone on the

---

[5] Landis testified that he gave permission to the officers to enter the building after Defendant was arrested, as well [*id.* at Page ID # 423].

front passenger-side seat. At that point, Trooper Seitner contacted an Assistant United States Attorney, who advised there was sufficient probable cause to search the van without a warrant based on the information given. Officers then conducted a search of the van that same night. They recovered a number of items from the van, including a Highpoint Firearms 9mm handgun and a Hewlett Packard ("HP") computer, which was later found to contain CSAM.[6]

The following day, Trooper Seitner returned to the building and took photographs of the van, including one which showed the post-search interior of the van as seen through the front windshield (Government's Exhibit 1). The Samsung cell phone box is visible in this photograph. Law enforcement did not impound or otherwise move the van, although they retained possession of the keys. Landis later had the van towed out of his building.

At the time of the hearing, Defendant was charged in a second superseding indictment with one count of transportation of a minor to engage in criminal sexual activity, two counts of exploitation of a child, one count of possession of child pornography, and one count related to his sex offender registry status[7] [Doc. 43 & Doc. 44]. He is now charged in a third superseding indictment which removes the transportation of a minor count [Doc. 75 & Doc. 76].

## II.    STANDARDS

---

[6] The subsequent search of the HP computer was conducted pursuant to a warrant. Defendant does not contest the warrant or the search of the HP computer in his motion to suppress.

[7] Count One (transportation of a minor to engage in criminal sexual activity) relates to events that allegedly occurred between November 1998 and June 2000. Count Two (exploitation of a child) relates to events that allegedly took place in 2006 and 2007. Count Three (exploitation of a child) and Count Four (possession of child pornography) relate to events that allegedly took place between June and September 2018. Count Five addresses additional penalties for registered sex offenders. Defendant has filed a motion to sever Counts One and Two from Counts Three through Five [Doc. 56], which is not before the undersigned.

7

Defendant's arguments are based on alleged violations of the Fourth Amendment, which guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "A warrantless search or seizure is 'per se unreasonable under the Fourth Amendment – subject to only a few specifically established and well-delineated exceptions.'" *United States v. Roark*, 36 F.3d 14, 17 (6th Cir. 1994) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)); *see also United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) ("Generally, the Fourth Amendment requires police officers to obtain a warrant prior to conducting a search." (*citing Maryland v. Dyson*, 527 U.S. 465, 466 (1999))).

One such exception to the warrant requirement – the "automobile exception" – permits an officer to search a "readily mobile vehicle without a warrant if he has probable cause to believe that the vehicle contains evidence of a crime." *United States v. Johnson*, 707 F.3d 655, 658 (6th Cir. 2013) (quoting *United States v. Redmond*, 475 F. App'x 603, 607 (6th Cir. 2012)); *see also Carroll v. United States,* 267 U.S. 132, 149 (1925) ("[I]f the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid."); *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998) ("Under the automobile exception to the warrant requirement, law enforcement officers may search a readily mobile vehicle without a warrant if they have probable cause to believe that the vehicle contains evidence of a crime.").

In *United States v. Galaviz*, the Sixth Circuit elaborated on the mobility factor of the automobile exception to the warrant requirement:

> The automobile exception allows officers to search a vehicle without a warrant if they have probable cause to believe that the

vehicle contains evidence of a crime. This exception has traditionally been based on the ready mobility of the automobile, which created an exigency sufficient to excuse failure to obtain a search warrant. Recent cases have clarified that the automobile exception need not rest on an independent showing of exigency, because even in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception.

645 F.3d 347, 355 (6th Cir. 2011) (citations, quotation marks, and alterations omitted); *accord Carter v. Parris*, 910 F.3d 835, 839 (6th Cir. 2018) (holding that although the Fourth Amendment generally requires a warrant before performing a search, law enforcement may search a vehicle and a lockbox in the vehicle without a warrant if they have probable cause to believe that the vehicle contains evidence of a crime) (quoting *Galaviz*, 645 F.3d at 355)), *cert. denied*, 139 S. Ct. 2703 (2019).

"Probable cause is defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). "Probable cause exists where 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The determination is a "commonsense, practical question" based upon the totality of the circumstances. *Gates*, 462 U.S. at 230-31. "This totality of the circumstances analysis includes a realistic assessment of the situation from a law enforcement officer's perspective," considering law enforcement training and experience. *Ferguson*, 8 F.3d at 392.

Defendant, as the proponent of the motion to suppress, generally bears the burden of establishing his own Fourth Amendment rights were violated by a challenged search. *See Rakas*

9

*v. Illinois*, 439 U.S. 128, 130 n.1 (1978) (citations omitted).  It is the Government's burden, however, to demonstrate by a preponderance of the evidence that a particular search or seizure is constitutional.  *See United States v. Baldwin*, 114 F. App'x 675, 681 (6th Cir. 2004) (citing *United States v. Winfrey*, 915 F.2d 212, 216 (6th Cir. 1990)); *see also Taylor v. City of Saginaw*, 922 F.3d 328, 334 (6th Cir. 2019) (holding that the government "bears the burden of demonstrating an exception to the warrant requirement" (citing *United States v. Jeffers*, 342 U.S. 48, 51 (1951))).  Furthermore, it is the Government's burden, by a preponderance of the evidence, to show that "valid and voluntary consent to the search was obtained."  *United States v. Davis*, 283 F. App'x 370, 373 (6th Cir. 2008) (quoting *United States v. Worley*, 193 F.3d 380, 385 (6th Cir. 1999)).

It is a longstanding rule that evidence obtained as a result of an unconstitutional search will be suppressed at trial.  *See Weeks v. United States*, 232 U.S. 383, 398-99 (1914).  However, the remedy of exclusion is a "judicial innovation," *United States v. Clariot*, 655 F.3d 550, 553 (6th Cir. 2011), to be used as a "last resort, not [a] first impulse."  *Hudson v. Mich.*, 547 U.S. 586, 591 (2006).

## III.   ANALYSIS

Defendant seeks to suppress all evidence obtained from the search of his van.[8]  Defendant contends the officers violated his rights under the Fourth Amendment by searching his van without a warrant or his consent.  The Government contends it had valid consent from Landis to enter the building, and that the search of the van was conducted pursuant to the automobile exception to the

---

[8] Government's Exhibit 3 was presented during the hearing as an inventory of the items recovered from the search of the van.  Item number 3 on the inventory is a Samsung Galaxy cell phone. During the hearing, however, the parties stipulated that no cell phone was found in the van but that a Samsung phone was found on Defendant during the search of his person, which was conducted immediately following his arrest.

10

warrant requirement.  Defendant asserts the automobile exception does not apply because he was *living* in his parked van at the time of the search.[9]  The sole issue before the Court is whether the warrantless search of Defendant's van is covered by the automobile exception to the warrant requirement under the circumstances present in this case.

In *California v. Carney*, 471 U.S. 386, 388 (1985), the United States Supreme Court addressed whether a warrantless search of the defendant's Dodge Mini Motor Home was proper under the automobile exception to the warrant requirement.  The Court found that "[w]hile it is true that [the defendant's] vehicle possessed some, if not many of the attributes of a home, it is equally clear that the vehicle falls clearly within the [automobile exception]."  *Id.* at 393.  The Court pointed out that it was "readily mobile" in that it "could readily have been moved beyond the reach of the police," and furthermore it was "licensed to operate on public streets; [was] serviced in public places; . . . and [was] subject to extensive regulation and inspection."  *Id.* at 393 (quotation marks and citation omitted).  The Court rejected the defendant's argument that the

---

[9] If, however, the automobile exception is found to apply in spite of Defendant's arguments to the contrary, then he does not dispute that the officers had probable cause to believe the van contained evidence of criminal activity.  Defendant originally also challenged the officers' entry into the building [*see* Doc. 55].  At the hearing, Defendant clarified that he no longer contests the officers' entry into Landis's building in light of the proof offered that Landis, the owner of the building, gave valid and voluntary consent to the officers to enter the building.  As a result of Defendant's concession, it is unnecessary for the Court to determine whether Defendant had a privacy interest in Landis's building or to otherwise address any issues related solely to the officers' entry into the building.  *See United States v. Kimber*, 395 F. App'x 237, 243 (6th Cir. 2010) ("A search pursuant to third-party consent will not violate the Fourth Amendment so long as the party granting consent had either actual authority or apparent authority to do so.").  Moreover, the testimony from Landis and Trooper Seitner clearly establish that Landis had actual authority to consent to the officers' access into the building and Defendant does not argue otherwise.  Accordingly, even assuming Defendant had a privacy interest in Landis's building, the officers' entry into the building was permissible.  The consent was limited to the building, however, and not to a search of the van.  At the hearing, the Government clarified that it does not dispute Defendant had a legitimate expectation of privacy in the van, and it agreed Landis did not have authority to, and did not, give consent to a search of Defendant's van.

11

automobile exception should not apply because the motor home was "capable of functioning as a home." *Id.* The Court reasoned that the "application of the vehicle exception has never turned on the other uses to which a vehicle might be put," but rather, it has "historically turned on the ready mobility of the vehicle, and on the presence of the vehicle in a setting that objectively indicates that the vehicle is being used for transportation." *Id.* at 394. The Court identified the following factors as relevant to determining whether a warrant is required: the vehicle's "location, whether the vehicle is readily mobile or instead, for instance, elevated on blocks, whether the vehicle is licensed, whether it is connected to utilities, and whether it has convenient access to a public road." *Id.* at 394 n.3.

The Sixth Circuit applied the *Carney* factors in *United States v. Markham*, 844 F.2d 366 (6th Cir. 1988). Officers received a tip that the defendant was selling drugs out of his Winnebago motor home, and he expected to receive a large shipment of marijuana to be delivered by pickup truck. Officers observed what appeared to be the expected marijuana delivery and conducted a warrantless search of the Winnebago. They seized several hundred pounds of marijuana from inside. *Id.* at 367. The defendant argued the automobile exception did not apply because the officers could have obtained a warrant. The Sixth Circuit rejected the argument, noting the *Carney* Court "[c]learly . . . did not contemplate that an agent's inability to obtain a search warrant be a prerequisite to the application of the automobile exception." *Id.* at 369. In addressing the *Carney* factors, the Sixth Circuit found:

> In this case, the motor home searched was on wheels and bore Tennessee license plates. In addition, although Mr. Markham resided in Tennessee, the vehicle was parked in a driveway connected to a public street in Barberton, Ohio. Moreover, there were no utility lines connected to the motor home. Clearly, Mr. Markham's motor home was so situated that an objective observer would conclude that it was being used as a vehicle and not as a residence. Therefore, in accordance with the holding in *Carney*, the

12

underlying considerations justifying a warrantless search under the automobile exception came into play and the warrantless search of the appellant's motor home was proper pursuant to the automobile exception to the warrant requirement of the Fourth Amendment.

*Id.*

In his supplemental brief, Defendant emphasizes the Government did not submit any proof showing the van was "readily mobile" at the time of the search or the day of his arrest and that Landis[10] told the officers Defendant had informed him the "van was overheating," and asked Landis "to use his Nissan car," and Landis agreed [Doc. 72-1]. Defendant does not elaborate further on the condition of the van, and he does not challenge Landis's unrebutted testimony that Defendant drove the van in the other days leading up to his arrest. Indeed, the van was parked some 90 miles from Defendant's residence in Chattanooga. Furthermore, the photographs of the van indicate there were no visible issues with the van. Contrary to Defendant's argument, I find this does constitute at least some evidence that the van was "readily mobile" at the time of the search.

Further, Defendant's late-filed exhibit, the case agent report excerpt, also indicates Landis informed the officers at the scene that Defendant's van would be repaired [Doc. 72-1 at Page ID # 345 (Landis "allowed [Defendant] to use his Nissan car until [Defendant] could get his van fixed.")]. *See United States v. Vega-Cervantes*, No. 1:14-cr-234-WSD, 2015 WL 4877657, at *27 (N.D. Ga. Aug. 13, 2015) ("The fact that the truck needed to be jumped off to crank or was in the need of servicing does not detract from its inherent mobility."); *see also United States v. Rommann*, No. 89–6042, 1990 WL 66823, at *2 (6th Cir. May 21, 1990), *cert. dismissed*, 497 U.S. 1057, 111

---

[10] The name is redacted; however, the context in the case agent report and the proof at the hearing make clear the report is referring to Landis.

S. Ct. 27, 111 L.Ed.2d 839 (1990) ("Defendant would have us read the 'ready mobility' requirement to mean that the government must show that it was necessary to make an immediate search or else risk losing the evidence. The Supreme Court has rejected this concept[.]"). Finally, no evidence indicates that, even if it developed overheating issues, the van could not be repaired or driven.

In *United States v. Robinson*, No. 3:10-CR-112, 2011 WL 1188503, at *7-8 (E.D. Tenn. Feb. 4, 2011), *report and recommendation adopted*, 2011 WL 1188488 (E.D. Tenn. Mar. 28, 2011), this Court held that the automobile exception applied to the search of a truck that was completely inoperable – it had just driven over a "spike strip" laid by the police to end a high speed chase, and all of the truck's tires were "blown out." *Id.* at *7. The defendant argued the truck was not readily mobile and therefore the automobile exception did not apply. The Court rejected the argument, noting the Sixth Circuit has "applied the automobile exception in a case in which the vehicle was inoperable at the time of the search." *Id.* at *8 (citing *Rommann*, 1990 WL 66823, at *1-2).

In *Rommann*, the district court determined that the automobile exception did not apply because at the time the truck was searched, it was not "readily mobile" as it "was up on a jack with one wheel removed for repair of a flat tire." *Id.*, at *1. The Sixth Circuit reversed, focusing on the nature of automobiles in general:

> We do not think the automobile exception to the warrant requirement should turn on the condition of the vehicle or whether, as a practical matter, it could be spirited away from the police before a search could be completed. Considerations of factors of this nature would just add more uncertainty as to what is permitted and what is prohibited. We believe the Supreme Court has moved to where the key inquiry is probable cause and, if that is present, most, if not all, auto searches will not require a warrant. It appears that the fact that an automobile is involved has subsumed in most fact situations any requirement for separate and distinct exigent circumstances.

14

*Id.* at \*3; *see also Vega-Cervantes*, 2015 WL 4877657, at \*27; *United States v. Mercado*, 307 F.3d 1226, 1229 (10th Cir. 2002) (finding that "mere temporary immobility due to a readily repairable problem . . . does not remove the vehicle from the category of 'readily mobile.'"); *United States v. Short*, 2 F.4th 1076, 1079-80 (8th Cir. 2021) (vehicle did not lose its "inherent mobility" due to flat tire).

Consistent with these authorities, I find the reported overheating problem does not preclude application of the automobile exception under the facts of this case. Nothing about the van indicated it had become a permanently immobile, fixed dwelling, or that Defendant no longer intended to use it as transportation.

Furthermore, ready mobility is not the only justification for the automobile exception. Defendant acknowledges as much, but he argues the other justification discussed in *Carney* (the "lesser expectation of privacy" in vehicles) does not come into play in this case. Rather, Defendant contends he had a *heightened* expectation of privacy in the van because he was actually living in it at the time of the search. I find this argument is belied by *Carney* itself and its progeny, and I therefore respectfully disagree. *See Carney*, 471 U.S. at 394 (applying automobile exception even though motor home could function as a residence, reasoning that "to fail to apply the exception to vehicles such as a motor home ignores the fact that a motor home lends itself easily to use as an instrument of illicit drug traffic and other illegal activity"); *see also Rommann*, 1990 WL 66823, at \*2 ("Although the defendant slept in his truck on occasion, this does not change the character of the vehicle any more than if the defendant was 'living' out of the back seat of a passenger vehicle.").

At the time of the search, Defendant's van was on wheels (*see* Government's Exhibit 2), and Defendant had been driving the van up until the day of his arrest. Defendant, who had a

15

residence, had only been sleeping in the van only for a few nights. The van was parked in the garage/storage area of an unfinished metal building that did not have permanent electricity or plumbing. Law enforcement had very recently searched Defendant's actual residence, which was located some 90 miles away from where the van was parked on June 7, and had been told Defendant had driven away in the van moments before they arrived. The officers who searched the van were informed Defendant was only borrowing a car until he could get the van repaired, further suggesting he planned to continue to use the van as transportation rather than as his home. Based on the proof, it appears Landis's building (and therefore the van) was not situated directly on a public road, but rather on an "access road" that allowed Landis to travel between his building and his work at Deer Run. Nevertheless, the testimony reflected Defendant was able to come and go freely from Landis's building, indicating at least reasonably convenient access to public roads. Considering the authorities cited herein and all of the circumstances present in this case, I find any objective observer would conclude the van was being used as a vehicle and not as a residence, even if they were aware Defendant had slept in the van for a few nights and that the van had an overheating problem.

Defendant also argues that once he was arrested and law enforcement had possession of the keys to his van, the van was effectively secured and there was no exigency justifying the officers' failure to obtain a warrant. To the extent this argument has not been adequately addressed by the foregoing analysis, I note the Supreme Court has specifically held that, "under our established precedent, the 'automobile exception' has no separate exigency requirement." *Maryland v. Dyson*, 527 U.S. 465, 466 (1999); *see also Markham*, 844 F.2d at 368-69 (6th Cir. 1988) (rejecting argument that "the automobile exception is inapplicable in this case because a warrant could have been obtained while the vehicle was unattended and under surveillance, and

there were, therefore, no exigent circumstances . . . ."). Accordingly, the asserted lack of exigency does not change my conclusion that the search of Defendant's van is covered by the automobile exception under the circumstances of this case.

As mentioned, it is not necessary to address the probable cause prong of the automobile exception, because Defendant does not contest it *if* the Court finds the automobile exception applies. I will nevertheless briefly address probable cause for the record. Officers lawfully entered Landis's building, with Landis's express permission as the owner of the building. They observed the van, and by looking through the front windshield, they could readily observe a Samsung cell phone box in the front passenger seat area in plain view. Agent Moore testified that CSAM is often produced and stored on cell phones, and that he was able to determine Defendant himself had previously produced numerous CSAM images using a Samsung cell phone. In light of this evidence and the totality of the circumstances, I find there was at least a "fair probability" that officers would find evidence of criminal activity related to CSAM in the van. *See United States v. Jackson*, No. 2:16-cr-20799, 2017 WL 1044993, at *2 (E.D. Tenn. Mar. 20, 2017) (probable cause that defendant's electronic devices contained evidence of sex trafficking based on victim's statements that defendant took her photograph to post in online "prostitution advertisements"); *United States v. Reynolds*, No. 3:08-CR-143, 2009 WL 1588413, at *3 (E.D. Tenn. May 14, 2009) ("Given the volume of drugs found, coupled with the fact that the drugs were shipped via Federal Express to a hotel for pickup, the Court finds that it was reasonable for the officers to believe that the cell phones might contain evidence of drug trafficking, and therefore the phones were properly seized during the warrantless search incident to arrest."), *report and recommendation adopted*, 2009 WL 1588532 (E.D. Tenn. June 4, 2009); *United States v. Keck*, 2 F.4th 1085, 1089-90 (8th Cir. 2021) (suspicion that defendant had downloaded child pornography, belief that defendant had

"devices" with him, and knowledge that defendant had "previously committed a child-pornography-related crime" sufficient to establish probable cause for vehicle search). Accordingly, I also note for the record that there is evidence of abundant probable cause to search the van.

In summary, I conclude the officers were lawfully present inside the building with express consent from Landis, who undisputedly had the authority to grant consent. I find the search of the van was lawfully conducted pursuant to the automobile exception, notwithstanding that the van had an overheating problem, that Defendant had slept in the van the previous two or three nights, and that the police had possession of the keys to the van when Defendant was in custody. I further find there was ample probable cause for the officers to believe the van would contain evidence of criminal activity given the totality of the circumstances.[11]

## IV.    CONCLUSION

For the reasons stated herein, I find the Government's warrantless search of Defendant's van was properly conducted pursuant to the automobile exception, such that no constitutional violation occurred. I therefore **RECOMMEND**[12] Defendant's motion to suppress [Doc. 55] be **DENIED**.

---

[11] As a result of these findings and conclusions, it is not necessary to address the Government's alternative argument that the officers' good faith in performing the search should preclude application of the exclusionary rule.

[12] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusory and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

18

ENTER:

s/ *Susan K. Lee*

SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE