UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | Case No. 1:21-cr-58 |
| v. | ) | Judges Atchley / Lee |
| | ) | |
| MARK ALAN DEAKINS | ) | |

## THE UNITED STATES' POST HEARING BRIEF

The defendant moved to suppress evidence from two search warrants: (1) Search Warrant One, 1:21-mj-97 (the defendant's home) and, (2) Search Warrant Two, 1:21-mj-112 (the defendant's a computer). A hearing was held on February 13, 2023. After the hearing, four issues merited briefing. First, regarding Search Warrant One, whether the language in Attachment A fails to meet the particularity requirement of the Fourth Amendment. Second, whether the failure to staple Attachment A to Search Warrant One also offends the particularity requirement. Third, if the language in Attachment A or the failure to staple the attachment to the warrant offends the particularity requirement, whether good faith applies.

The sole issue under Search Warrant Two is whether good faith applies. What follows is the government's post hearing brief.

1

# SEARCH WARRANT ONE
## The Defendant's House (1:21-mj-97)

The evidence seized pursuant to Search Warrant One should not be suppressed: the language of Attachment A meets the particularity requirement of the Fourth Amendment; incorporation of attachments to a warrant does not require a staple when reviewed or when executed, and, in any event, good faith applies.

### A. Particularity and Attachment A

The defendant claims that the language in "Attachment A" delegated the probable cause determination to the executing officials and this delegation offends the particularity requirement of the Fourth Amendment. The government disagrees. The disputed language concerns the potential search of vehicles. No vehicles were searched; no evidence was recovered from vehicles. Furthermore, even the defendant's reading of Attachment A is consistent with the particularity requirements of the Fourth Amendment. The language of Attachment A is as follows:

> This search shall include all rooms and garages or storage spaces, attached or unattached, that are associated with the SUBJECT PREMISES; any containers, locked or unlocked, located with or attached to the SUBJECT PREMISES; any vehicles parked within the vicinity of the SUBJECT PREMISES for which there is probable cause to believe are under the dominion and control of Mark Alan Deakins, as evidenced by any keys, registration documents or other evidence found inside the SUBJECT PREMISES; and any computers, cell phones, or other digital media devices found in SUBJECT PREMISES or within vehicles, *for which there is probable cause to*

> *believe pertain to Mark Alan DEAKINS*, as evidenced by being stored in a place with other personal effects of Mark Alan DEAKINS, or other evidence found inside SUBJECT PREMISES."

*See* 1:21-mj-00097, Page #10. (emphasis added.)

In short, the dispute is whether the phrase "for which there is probable cause to believe pertain to Mark Alan Deakins" relates to electronic devices found in vehicles or in the home. The government submits that the best reading interprets this section as relating to the search of devices found in vehicles. That is, Attachment A gave the authorities direct permission to search for any computers, cell phones, or other digital media devices found in SUBJECT PREMISES. The government reads the clauses relating to vehicles as follows. The first clause gave the officers authority to search *vehicles* if officers found keys or other registration documents. Then, the second clause gave officers authority to search electronic devices found in vehicles provided it was located among other effects of the defendant's in the vehicle or other evidence in the house that linked the defendant to the computer. It is not a model of clarity, yet this reading is consistent with paragraph 12 in the affidavit, which notes that there were four vehicles either registered or associated with the defendant and one of those vehicles, a van, had recently been seen at the address. (Search Warrant One, PageID# 10.) Had the officers found keys to the van in the house, they could have searched the van under Attachment A. If they had found the personal effects of the defendant in the van,

3

or some other evidence in the house that linked the defendant to a computer in the van, officers could have then searched the computer itself.

The language of Attachment A permitted the officers to search vehicles on the property and computers within the vehicles *if* the officers found evidence connecting the defendant to the vehicles. If anything, this reading of Attachment A gives an additional layer of privacy to any guests of the defendant who may have parked their car on his premises. Ultimately, this exercise is entirely academic because no vehicles were searched and, therefore, no evidence was seized from within vehicles on the property.

The defendant argues that the disputed section should be read as permitting the search of computers in the home if the computers were found in a place (the home) with other personal effects of the defendant. The defendant's reading effectively makes the authority to search computers conditioned upon a triggering event, which makes it an anticipatory search warrant. That is, upon finding any personal effects of the defendant in the house, the officers could seize and search the computers. The defendant does not address the consequences of his reading because he cannot claim the "triggering event," the finding of personal effects of the defendant in the house, did not occur. Even if this Court accepts his reading as an anticipatory search, there is no question the triggering event occurred, and

4

anticipatory search warrants do not run afoul of the Fourth Amendment. *United States v. Grubbs,* 547 U.S. 90, 94 (2006).

Most importantly, neither reading, the government's nor the defendant's, undermines the particularity requirements of the Fourth Amendment. Particularity has two parts: the warrant must particularly describe the thing to be searched (*Dalia v. United States*, 441 U.S. 238, 255-57 (1979)) and it must particularly describe the items to be seized. *United States v. Grubbs*, *Id* at 97 (2006). No reading of Attachment A leaves any question that the place to be searched was the defendant's home and his computers.

To the extent this Court views the disputed language as ambiguous, it should still defer to the magistrate's determinations. After the fact, "line-by-line scrutiny" of search warrants is "inappropriate," and should "not take the form of de novo review." *Illinois v. Gates,* 462 U.S. 2123, 236, and 246 n. 14. Instead, reviewing courts are to accord a magistrate's determination with "great deference." *Spinelli v. United States,* 393 U.S. 410, 419. (1969).

Ultimately, whether the Court accepts the government's or the defendant's reading of Attachment A is immaterial. In either case, the touchstone is reasonableness and—to the extent that Attachment A placed any condition on the search of electronic devices found in the home—that condition was fulfilled.

5

## B. Staples

Second, the defendant claims that the search warrant fails to meet particularity because, when issued or executed, Attachments A and B were not stapled to the warrant. Importantly, the following facts were undisputed at the hearing: (a) the attachments adequately described the items to be seized and the place to be searched; (b) the attachments were presented to the Magistrate Judge who issued the search warrant; (c) the attachments were explicitly incorporated into the warrant; (d) the attachments accompanied the search of the home; (e) the affiant led the search; (f) the attachments guided the affiant in the search of the home; and, (f) the search itself did not exceed the scope of Attachment A or B.

The defendant's central claim is that the failure to staple the attachments to the warrant technically violates the particularity requirements of the Fourth Amendment. Although there is no evidence of whether the documents were stapled when the agent presented the affidavit and attachments to the Magistrate Judge, the search warrant in the record shows that the affidavit and the attachments were joined in single packet that was internally numbered "1 of 24" through "24 of 24." Attachments A and B were "18 of 24" and "19-22 of 24," respectively. The agent carried this same packet of information, including Attachments A and B, when he and others executed the warrant, which explicitly incorporated the attachments. In the government's view, A and B *were* attached to the warrant by

6

being in the same packet when the Magistrate Judge issued the warrant and when the agent executed the warrant. The defendant's claim to the contrary is meritless because there is no requirement that an attachment be stapled to a document. Moreover, the test for particularity at both the issuance and the execution is the same: was the warrant properly cabined by particularity when it was issued and when it was served.

In the Sixth Circuit, particularity may be satisfied through the express incorporation or cross-reference of supporting documents that adequately describe the items to be seized, and physical attachment to the warrant is not required. *See United States v. Evans Landscaping Inc.,* 850 F. App'x 942, 948 (6th Cir. 2021) (stating, "it is of little import that these attachments were sub-documents appended to the warrant application presented to the magistrate judge, rather than directly attached to the warrant."); *United States v. Richards,* 659 F. 3d 527, 536 (6th Cir. 2011) (holding "particularity requirement may be satisfied through the express incorporation or cross-reference of a supporting affidavit that describes the items to be seized, even though the search warrant contains no such description."); *United States v. Pritchett,* 40 F. App'x 901, 907 (6th Cir. 2002) (holding search pursuant to a warrant was valid even though properly incorporated attachments were not present during the search and were not attached to the warrant); *United States v.*

7

*Gahagan,* 865 F. 2d 1490, 1497 (6th Cir. 1989) (search was valid even though affidavit was not attached to the warrant because affiant executed the warrant).

The undersigned can find no case in in the Sixth Circuit that invalidates an otherwise valid search warrant because the attachments were not stapled to the warrant. Contrary to the defendant's claim, particularity does not turn on physical attachment. Instead, particularity turns on whether a warrant is cabined by a particular list of items to be searched at the time it is authorized and executed. The issue is whether the particularity documents "accompany" the warrant and not whether the documents are stapled. In *Groh v. Ramirez,* 540 U.S. 551, 557-58 (2204), the Supreme Court wrote:

> We do not say that the Fourth Amendment prohibits a warrant from cross-referencing other documents. Indeed, most Court of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation and if the supporting document *accompanies* the warrant. (emphasis added.)

*Id.* at 557-58.

As noted above, the defendant admits that the appropriate documents accompanied the warrant at both the issuance and the execution of the warrant. As far as the undersigned is aware, there are no cases that require a magistrate judge review documents while they are stapled, or an agent execute the warrant with a staple. As the Ninth Circuit put it, "We simply do not believe that the Constitution requires us to draw the law between lawful and unlawful searches according to the

8

presence or absence of a staple, a paper clip, a bit of tape, or a rubber band." *United States v. Towne,* 997 F.2d 537, 547 (9th Cir. 1993).

### C. Good Faith

Because the warrant is neither flawed in the way it was issued nor in the way it was executed, the officials who executed the warrant acted in good faith and exclusion is inappropriate. Nether the so-called ambiguity nor the absence of a staple render the search warrant so lacking in particularity as to make the agent's reliance upon the warrant unreasonable. Because the warrant was valid, the Court need not reach the question of good faith, but certainly, the warrant was executed in good faith and exclusion is inappropriate.

**SEARCH WARRANT TWO**
**Property from the Van (1: 21-mj-112)**

The defendant argued and the government conceded that Attachment A to Search Warrant Two, which listed the things to be seized, was not explicitly incorporated into the warrant. Instead, Attachment B was incorporated. Although this was an error, it was not as simple as incorrectly typing "B" instead of "A." The search warrant was for electronic devices that had been seized from the defendant's van and were in the custody of the FBI. The items to be searched were part of a subset of a larger set of items that included non-searchable items like the defendant's gun. Thus, when SA Moore pulled the items to be searched, he in fact did pull and rely on those items listed in Attachment B. Moreover, the place to be

9

searched was the evidence room at the FBI office. What SA Moore missed, like any other person may have missed, was that the items listed in Attachment B were both items to be seized from the evidence room but were also themselves "places" to be searched. A more accurate "items to be seized" entry might have stated, "the items to be seized are incorporated and listed in Attachment B and those items are to be searched for evidence listed and incorporated herein from Attachment A."

True, this was an error, but it was not the kind of error that would have been immediately noticeable. Most importantly, when the search warrant left the Magistrate Judge's hands, SA Moore believed that the search warrant authorized him to search for items to be seized in Attachment B for those items listed in Attachment A, which is exactly what he and the forensic examiner did. Thus, his and the examiner's beliefs were objectively reasonable, consistent with what the search warrant clearly intended, and the ultimate search was cabined as the search warrant would have required had Attachment A been explicitly incorporated alongside Attachment B.

The officers executed the warrant in good faith. Thus, the government submits that, notwithstanding the error, the Court should not suppress evidence. Evidence seized in good faith should not be suppressed based on the good faith exception established in *United States v. Leon,* 468 U.S. 897 (1984). The undisputed facts in this case show the search warrant was obtained in good faith.

### A. Undisputed Facts

The following facts adduced from the hearing are undisputed. **First**, the search warrant affidavit contained probable cause to search the items listed in Attachment A. **Second**, Attachment A was presented to the Magistrate Judge who found that there was probable cause to search for the items listed in Attachment A. **Third,** Attachment A was specific enough to meet the particularity requirements of the Fourth Amendment.[1] **Fourth**, Attachment A indicates that it is a "LIST OF ITEMS TO BE SEIZED." Although it was not explicitly incorporated into the warrant, it is clear from the document itself that it was intended to be incorporated and the omission was a clerical error.

**Fifth**, the warrant described the *place* to be searched with sufficient particularity. **Sixth**, the warrant mistakenly incorporated Attachment B instead of Attachment A as the items to be seized. That is, Attachment A was not explicitly incorporated. On the other hand, the warrant does mention that the Magistrate Judge considered an affidavit, and the warrant does cross-reference the affidavit by a unique case number—1:21-mj-112. The government concedes the cross-

---

[1] There was no evidence to show whether the items were paper-clipped or stapled when they were presented to the Magistrate Judge. But as argued above regarding the first search warrant, the entire affidavit was numbered, and the attachments were included in the numbering. Undoubtedly, the attachments accompanied the affidavit and warrant when it was issued and executed. Again, the presence or absence of a staple is not dispositive and will not be re-addressed here.

11

reference is not as strong as it should have been.  However, "there are no required magic words of incorporation." *United States v. SDI Future Health, Inc.* 568 F.3d 684, 700 (9th Cir. 2009).  *See also United States v. Abdalla,* 327 F. Supp. 3d 1079, 89 (M.D. Tenn. 2018) *quoting United States v. Vesikuru,* 314 F.3d 1116, 1120-21 & n. 4 (9th Cir. 2002) (finding cross-reference sufficient when the warrant stated "upon the sworn complaint made before me there is probable cause to believe…")

**Seventh**, Attachment A accompanied the officials when the search warrant was executed.  **Eighth**, the affiant, SA Moore, was the lead law enforcement official and led the search.  **Ninth**, Attachment A guided the scope of the search itself.  **Tenth**, other than the wrong attachment listed on the warrant, the search itself was reasonable:  it was conducted during the day and the officers knocked and announced before entry.  **Eleventh**, the items seized were in fact within the scope of Attachment A and the defendant does not claim that any items were seized outside the scope of Attachment A.  In other words, the defendant concedes he was not prejudiced by erroneously incorporating Attachment B instead of Attachment A.  **Twelfth**, SA Moore intended to present Attachment A to the defendant, but the defendant was not present and was apprehended 5 days later.  **Thirteenth**, the search warrant was returned in a timely and appropriate manner.

12

## B. Good faith

The incorporation of Attachment B instead of Attachment A was a clerical error and suppression in this case would have almost no deterrent effect because the officer was acting in good faith. Indeed, in this specific case, the error is understandable because Attachment B did in fact list the items that were to be seized from the FBI office—a computer that was stored among other items. Technically, it should have stated that the items to be seized from the evidence room were those on Attachment B and the evidence to be seized from those items were the items listed in Attachment A. But it is certainly understandable how the agent did not immediately recognize that the warrant contained an error.

As a general rule, clerical errors, including missing attachments to search warrants, do not subject the recovered evidence to suppression. In *United States v. Qazah,* 810 F.3d 879, 882 (4th Cir. 2015), the defendant filed a motion to suppress because the search warrant incorporated the wrong attachment—it incorporated an Attachment B, which "described items to be seized" from a co-defendant's house, not the defendant's house. *Id.* The wrong attachment was used to search the right defendant's home. *Id* at 884. (This fact differs from the facts of the case before this Court—there is no dispute that the search of the computer in this case was conducted using the appropriate attachment.) The AUSA in *Qazah* acknowledged that when they applied for the search warrant, they had "mistakenly included the

13

Attachment B" that had been prepared for another person's house. *Id.* At the suppression hearing, the evidence showed that the "judge had the correct version of the documents open on her desk" but they were switched in the signing process. *Id.* at 883.

The Fourth Circuit affirmed the district court's refusal to suppress the evidence finding that the "error" was a "technical one," which did not "influence the warrant's issuance, nor adversely affect its execution." *Id.* at 886. It was important to the decision that probable cause was not lacking, there were no "misstated facts," and there was no evidence that the "actual search conducted or the items seized were unauthorized by the correct version of the warrant." *Id.* This was so, even though they searched a house that was different than the house listed in the attachment. In that case, the evidence supported the finding that the judge issued the warrant while considering the correct attachment. *Id.* This fact, that the Magistrate Judge considered the appropriate attachment, is shared with the case now before this Court.

In agreeing that the good faith exception to the exclusionary should apply, the Fourth Circuit wrote, "[m]ost important to the analysis, however, is our conclusion that the suppression of evidence recovered in this case would have almost no deterrent effect because the officers were, at bottom, acting in good faith." *Id.* at 887. Citing *Davis v. United States,* 564 U.S. 229 (2011), the Court

14

noted that the "Supreme Court has repeatedly explained that the exclusionary rule's 'sole purpose…is to deter future Fourth Amendment violations and that exclusion is appropriate only when 'the deterrence benefits of suppression… outweigh its heavy costs." *Id.* Finally, the Court explained, "[g]iven that the officers here were, at most, guilty of simple negligence in failing to recognize the document-assembly error before executing the warrant and that, in any event, they acted in good faith, *Leon* and its progeny compel the conclusion that the district court correctly denied [the defendant's] motion to suppress." *Id.* at 887.

In the Fifth Circuit, the circuit court reviewed the denial of a motion to suppress evidence obtained after a search warrant served on the defendant and located in the Magistrate Judge's files "failed to include the second attachment describing the items to be seized." *United States v. Russell,* 960 F. 2d 421, 22 (5th Cir. 1992). The Court noted that, despite the missing attachment, during the search, the officers "posted a copy of the list of items to be seized" and, when the search was completed, they served "a copy of the warrant and a copy of the inventory of the items seized" on the defendant. *Id.* The defendant claimed the warrant was defective because it was "missing the attachment listing and describing the items to be seized…and because the warrant was not obtained and executed in good faith." *Id.* at 423. The Fifth Circuit disagreed and affirmed the district court's application of good faith, explaining that the warrant was "defective

15

because of clerical error" and that it was executed in good faith. *Id.* at 425. The exclusionary rule did not apply because it, the exclusionary rule, was adopted to "deter unlawful searches by police, not to punish the clerical errors of magistrates and judges." *Id.* at 426.

The D.C. Circuit considered whether the district court correctly refused to suppress evidence after detectives searched a motel room with a warrant, which did not "include any specific description of the items to be seized" and the underlying "affidavits were neither incorporated by nor attached to the warrant." *United States v. Anderson,* 851 F. 2d 384, 388 (D.C. Cir. 1988.) The Court noted that the "search was executed by the same officers who had prepared the affidavits," and "the scope of the search was limited to the items listed in those affidavits." *Id.* Citing *Sheppard,* the court affirmed the district's refusal to apply the exclusionary rule holding that the "officers had an 'objectively reasonable basis' for their mistaken belief that their search of the …room was authorized by a valid warrant."

In *United States v. Towne,* 997 F.2d 537 (9th Cir. 1993), the Ninth Circuit considered whether an attachment necessary for particularity should have been considered part of a search warrant. Much of the opinion concerns whether to consider extrinsic evidence from a state judge (who authorized the search warrant) in determining whether the attachment was considered and technically incorporated. *Id.* at 539-48.

16

Important to this memorandum though is the Ninth Circuit's direction to the district for remand if the district court concluded that the particularity document should not be considered part of the search warrant. *Id* at 549. The Ninth Circuit wrote, "even if the district court finds that …Attachment B cannot be considered an integral part of the search warrant as a matter of law, it does not follow that the good faith exception cannot apply." *Id.* If the district court concluded the document was not part of the search warrant, the Court admonished the lower court to carefully consider applying the good faith exception. To this end, the Court acknowledged that it had been "expressly and repeatedly warned against taking 'an overly technical view of the validity of search warrants and the application of the exclusionary rule." *Id. citing Leon.* On this point, the Court looked to the specific facts of the case and to the beliefs of the officer who executed the warrant. *Id.* "In short, nothing has thus far been brought to our attention that forecloses the possibility that [the officer] believed Attachment B was part of a valid search warrant, that the search was carried out in keeping with this belief, that is was held in good faith, and that it was objectively reasonable." *Id* at 550.

The government recommends the same approach in this case now before this Court. The records shows that SA Moore and the forensic examiner who searched the devices held objectively reasonable beliefs that the search warrant authorized them to search the devices. They held their beliefs in good faith, and they used the

17

appropriate attachment to cabin the search. The search was objectively reasonable. For all these reasons, the Court should apply the good faith exception to the exclusionary rule and overrule the defendant's objections to suppress the evidence obtained from Search Warrant Two.

## CONCLUSION

This Court should overrule the defendant's motion to suppress.

Respectfully Submitted,

FRANCIS M HAMILTON III
UNITED STATES ATTORNEY
By:    s/ James T. Brooks
James T. Brooks
Assistant United States Attorney
1110 Market Street, Suite 515
Chattanooga, Tennessee 37402
(423) 752-5140
James.brooks@usdoj.gov