UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-CR-058-CEA-SKL |
| | ) | |
| MARK ALAN DEAKINS, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Before the Court is a second motion to suppress filed by Defendant Mark Alan Deakins ("Defendant") [Doc. 101]. Defendant seeks to suppress all evidence seized during the execution of two search warrants authorized by a judge of this Court: one issued on June 2, 2021 ("First Warrant") and the other issued June 18, 2021 ("Second Warrant"). Plaintiff United States of America ("Government") filed a response in opposition to the motion [Doc. 108]. Defendant filed a reply [Doc. 109], and an evidentiary hearing was held on the motion on February 13, 2023. Following the hearing, Defendant [Doc. 117] and the Government [Doc. 116] each filed supplemental briefs and this matter is now ripe. The motion was referred for a report and recommendation by standing order pursuant to 28 U.S.C. § 636(b). For the reasons addressed below, I recommend that Defendant's second motion to suppress be denied.

## I. FACTS

The Government called two witnesses during the hearing: Federal Bureau of Investigation ("FBI") Special Agent Samuel Moore ("Agent Moore") and FBI Digital Forensic Examiner Pasquale Rinaldi ("Rinaldi"). Both agents have extensive law enforcement experience and their

respective credibility and expertise was not challenged by Defendant. No witnesses were called by Defendant.

Defendant is charged with various transportation, exploitation, and pornography crimes involving minors. The following facts are generally undisputed and I **FIND** as follows:

A.       **First Warrant (Residence and Person of Defendant)**

Paperwork regarding the First Warrant and search is found in the record at No. 1:21-mj-097-CHS and all references to the docket in this section, or otherwise to the First Warrant, are to that docket. None of the documents were docketed under seal.

Moore's Application for the First Warrant is for a search of the "[r]esidence, vehicles, and person of [Defendant] located at 2305 Wilder Street, Chattanooga, TN 37406, as described more fully in Attachment A." [Doc. 1 ("First Application")]. The First Application states it attaches an Affidavit of Moore ("First Affidavit"), which is also filed in the record [Doc. 2]. Attachment A to the First Affidavit, which describes the property to be searched, includes an ariel photograph of the SUBJECT PREMISES along with a description of the search. To identify the concealed person or describe the property to be seized, the First Application states it has "attached and incorporated" Attachment B. Attachment B to the First Affidavit sets out the items to be seized as materials that constitute evidence of the commission of child pornography offenses, specifically "computers, storage media, and mobile devices used as a means to commit the violations described above or to store any records or information permitted to be seized by this Attachment A (*sic*)." [*Id.* at Page ID # 20]. For any such seized computer or storage medium, Attachment B contains several pages defining the items of evidence to be seized during the search of the computer or storage medium [*Id.* at Page ID # 20-23]. While Attachment A and Attachment B are not physically attached to the First Application in the record, they are attached to, and consecutively numbered with, the First

2

Affidavit, which is expressly referenced in the First Application. The First Application was docketed on June 2, 2021 [Doc. 1].

The First Application was based on facts set forth in the First Affidavit. As noted, Attachment A and Attachment B are physically attached to the First Affidavit along with Attachment C with consecutively numbered pages that include all attachments.[1] Attachment A is not specifically mentioned in the First Affidavit, but Attachment B is incorporated into it [Doc. 2 at Page ID # 3]. The First Affidavit, which was part of the search warrant package presented to the issuing magistrate judge, the Honorable United States Magistrate Judge Christopher H. Steger, was also docketed on June 2, 2021.

The First Warrant was issued by Judge Steger on June 2, 2021 [*see* Doc. 3]. The First Warrant, a standard AO 93 form, states Judge Steger found probable cause for the search and seizure based upon his review of the First Affidavit.[2]

The next day, Moore executed the First Warrant with a team of ten law enforcement officers. Moore was the on-scene commander and search team leader for the execution. Prior to the execution, he led briefings—both the day before and the day of the execution—to review the First Warrant with the search team. These briefings included a review of Attachment A and Attachment B. His job included answering other law enforcement officers' questions during execution of the search about whether items came within the scope of the First Warrant. During

---

[1] Attachment C [Doc. 2 at Page ID # 24-25], a protocol for searching devices or media that store data electronically, has not been put at issue and will not be addressed further herein.

[2] Both Warrants reference the Affidavits generically: "I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, . . . ." No evidence suggests there was any recorded testimony as to either of the Warrants.

the search, officers found and seized solely from the residence various electronic media devices, including a computer.

Defendant was not home on the day the First Warrant was executed. Had Defendant been home, Moore would have reviewed Attachment A and Attachment B with Defendant. Moore had Attachment A and Attachment B with him before and during the search. A copy of the First Warrant (without Attachment A and Attachment B) was left at Defendant's residence.

Once the return was made to Judge Steger, the First Warrant was filed on June 10, 2021 [Doc. 3]. All original First Warrant paperwork was transferred by the Clerk's Office to the United States Attorney's Office on June 11, 2021, in accordance with Standing Order 13-07. The filed First Warrant includes the completed return and an attached "Receipt for Property," but does not include either Attachment A or Attachment B [Doc. 3 at Page ID # 27-28].

Pursuant to the First Warrant, the seized electronic media devices were sent to the FBI digital forensics lab in Knoxville where they were later searched by Rinaldi. Prior to conducting the search, Rinaldi received and reviewed a copy of the First Warrant with attachments and he conducted his search in accordance with the First Warrant and discovered evidence that the Government plans to use against Defendant.

After an extensive hearing, I **FIND** that even though the First Warrant references Attachment A and expressly states Attachment B is "attached and incorporated herein," neither Attachment A nor Attachment B was physically attached to the First Warrant at relevant times.

### B.    Second Warrant

Paperwork regarding the Second Warrant and search is found in the record at No. 1:21-mj-112-CHS and all references to the docket in this section, or otherwise to the Second Warrant, are to that docket. None of the documents were docketed under seal.

4

Moore's application for the Second Warrant is for "[p]roperty seized from the person and vehicle of [Defendant]" located at the FBI office on Chestnut Street, Chattanooga, Tennessee "as set out in Attachment A, attached and incorporated herein." [Doc. 1 ("Second Application")]. This was a reference to the incorrect attachment, and the correct reference for the attachment describing the location of and items to be searched should have been to Attachment B. To identify the concealed person or describe the property to be seized, the Second Application claimed it "attached and incorporated" Attachment B. As filed on June 18, 2021, the Second Application is a one-page document with no attachments [Doc. 1].

The Second Application was also based on facts set forth in an "attached" Affidavit of Moore [Doc. 2 ("Second Affidavit")]. As before, Attachment A and Attachment B are not physically attached to the Second Application, but are attached to the Second Affidavit, which was part of the search warrant package presented to Judge Steger. Attachment A is defined and described in the Second Affidavit twice: (1) "this affidavit will show there is probable cause that records and other items related to the violations being investigated (as specifically described in Attachment A, attached hereto and incorporated herein) will be found within the items." [Doc. 2 at Page ID # 3]; and (2) "that the items described in Attachment A, attached hereto and incorporated will be found within the seized property of [Defendant] located at the [FBI office]." [Doc. 2 at Page ID # 9]. Attachment B does not appear to be mentioned in the Second Affidavit.

The Second Warrant was issued by Judge Steger on June 18, 2021. The Second Warrant, a standard AO 93 form, states Judge Steger found that the "affidavit(s)" establish probable cause for the search and seizure.

Like the First Warrant, the Second Warrant does not physically attach either Attachment A or Attachment B. Unlike the First Warrant, the Second Warrant contains no reference to

Attachment A whatsoever. The Second Warrant states Attachment B is "attached and incorporated herein," to "identify the person or describe the property to be seized." [Doc. 3 at Page ID # 15]. Attachment B is the description of the cell phone, laptop, "SanDisk," and thumb drives held in the FBI office that were first seized during a prior search of the person and vehicle of Defendant,[3] not a list of items to be seized from the search of those already in-custody electronics. The list of items to be seized from those electronic devices, is set forth in the unattached and unincorporated Attachment A.

The Second Warrant was served at the FBI office in Chattanooga by Moore and he relied on the entire search warrant packet, including the Second Application and Second Affidavit, which physically included or incorporated the Attachments. As the seized items were in the local FBI office, Moore executed the search of three of the four seized items—the thumb drives, cell phone, and SanDisk—since he had the ability to search those items. He forwarded the item he could not search—the computer—to the forensic lab, where it was analyzed by Rinaldi. Prior to conducting the search, Rinaldi received and reviewed a copy of the Second Warrant and Attachments. A copy of the paperwork received and reviewed by Rinaldi was made Government's Exhibit 2 to the hearing.[4] Rinaldi conducted his search in accordance with Attachment A and Attachment B and discovered evidence that the Government plans to use against Defendant on the computer.[5]

---

[3] *See also* Second Affidavit [Doc. 2 at Page ID # 8, n.1-4]. The circumstances of the search of Defendant and his van wherein these items were seized are fully described in the report and recommendation and Order addressing Defendant's first motion to suppress, and will not be repeated herein.

[4] The Government did not introduce an Exhibit 1.

[5] While the Government seems to suggest some evidence was found by Moore on the thumb drive(s), the Government represented that at trial it would not rely on any evidence found on the thumb drive(s) during the execution of the Second Warrant by Moore.

6

On the same day the Second Warrant was issued, a return was made to Judge Steger and the Second Warrant was filed on June 18, 2021 [Doc. 3]. The Second Warrant, which is filed with the completed return and an attached "Receipt for Property," does not include either Attachment A or Attachment B. All original Second Warrant paperwork was transferred by the Clerk's Office to the United States Attorney's Office on July 8, 2021, in accordance with Standing Order 13-07.

After an extensive hearing, I **FIND** that even though the Second Warrant states Attachment B is attached and incorporated, Attachment B was not physically attached to the Second Warrant at relevant times. I further **FIND** that Attachment A, which is not mentioned in the Second Warrant at all, was not physically attached to the Second Warrant at relevant times or expressly incorporated into the Second Warrant.

## II. STANDARD

The Fourth Amendment prohibits "unreasonable searches and seizures" and guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Thus, the Fourth Amendment expressly imposes two requirements: first, all searches and seizures must be reasonable; and second, a warrant may not be issued unless probable

cause is properly established and the scope of the authorized search is set out with particularity.

*See Payton v. New York,* 445 U.S. 573, 584 (1980).[6]

Defendant's arguments are directed at the particularity requirement of the Fourth Amendment.

> The manifest purpose of [the] particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.

*Maryland v. Garrison*, 480 U.S. 79, 84 (1987). The particularity requirement also "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Groh v. Ramirez*, 540 U.S. 551, 561 (2004) (citations omitted).

To satisfy the particularity requirements, the warrant must identify with specificity the place, person, or items to be search or seized. *See* Fed. R. Crim. P. 41. If the text of the warrant does not contain the required information, "[t]he particularity requirement may be satisfied through

---

[6] This report and recommendation will sometimes collectively refer to both the First Warrant and the Second Warrant as "Warrants," to both Attachment A and Attachment B to each of the Warrants as "Attachments," and to both the First Affidavit and Second Affidavit as "Affidavits." Defendant does not claim the Warrants were issued without an adequate demonstration of probable cause based on the information contained solely within the four corners of the Affidavits, which did include the Attachments. In other words, there is no dispute that the Affidavits, which attached consecutively numbered Attachments, establish "a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Hines*, 885 F.3d 919, 923 (6th Cir. 2018); *see also Mays v. City of Dayton*, 134 F.3d 809, 814 (6th Cir. 1998) ("A determination of probable cause simply requires consideration of whether there were reasonable grounds to believe at the time of the affidavit that the law was being violated on the premises to be searched."); *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) ("[T]he circumstances must indicate why evidence of illegal activity will be found in a particular place." (internal quotation marks omitted)).

8

the express incorporation or cross-referencing of a supporting affidavit that describes the items to be seized, even though the search warrant contains no such description." *United States v. Richards*, 659 F.3d 527, 537 (6th Cir. 2011) (citing *Baranski v. Fifteen Unknown Agents of the Bureau of Alcohol, Tobacco and Firearms*, 452 F.3d 433, 439-40 (6th Cir. 2006) (en banc)).

It is a longstanding rule that evidence obtained as a result of an unconstitutional search will be suppressed at trial. *E.g., Weeks v. United States*, 232 U.S. 383, 398-99 (1914); *Massachusetts v. Sheppard*, 468 U.S. 981, 988 n.5 (1984) ("The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional."). However, even if a warrant lacks sufficient particularity in its description of the place to be searched or the items to be seized, the evidence will not be suppressed if the officers acted in good faith on the issuing magistrate's determination that the warrant was sufficient under the good faith exception to the exclusionary rule. *United States v. Leon*, 468 U.S. 897 (1984). When police act in "objectively reasonable reliance on a subsequently invalidated search warrant" signed by a neutral and detached magistrate, "the marginal or nonexistent benefits produced by suppressing evidence . . . cannot justify the substantial costs of exclusion." *Id.* at 922.

Where "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope . . . there is no police illegality and thus nothing to deter." *Id.* at 920-21. "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135 (2009). The remedy of exclusion is a "judicial innovation," *United States v. Clariot*, 655 F.3d 550, 553 (6th Cir. 2011), to be used as a "last resort, not [a] first impulse." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006).

9

## III.    ANALYSIS

Regarding particularity, the Sixth Circuit has held:

> The evil that the framers of the Constitution were trying to eradicate with the particularity requirement was the so-called general warrant that allowed officers to search at random. This requirement eliminates generalness and provides both a reason for and limitation of the search.

*United States v. Durk*, 149 F.3d 464, 466 (6th Cir. 1998). "Particularity 'eliminates the danger of unlimited discretion in the executing officer's determination of what is subject to seizure.'" *United States v. Greene,* 250 F.3d 471, 476-77 (6th Cir. 2001) (quoting *United States v. Blakeney,* 942 F.2d 1001, 1026 (6th Cir. 1991)).

The Sixth Circuit uses a two-part test to determine whether a warrant satisfies the particularity requirement: (1) whether the place to be searched or thing to be seized is described with sufficient particularity to enable the officers to locate the premises or things with reasonable effort; and (2) whether there is reasonable probability that some other premises or thing might be mistakenly searched or seized.  *See United States v. King,* 227 F.3d 732, 750 (6th Cir. 2000).  A description is "valid if it is as specific as the circumstances and the nature of the activity under investigation permit."  *United States v. Ables,* 167 F.3d 1021, 1033 (6th Cir. 1999).

Because the particularity of each of the Warrants must be addressed on its own, I will address the Warrants separately to some degree.  Because the Second Warrant addressees more particularity issues than the First Warrant, I will begin my analysis with the Second Warrant.  I note, however, that my conclusions regarding the application of the good faith exception applies to both Warrants.

A.    **Second Warrant**

Defendant argues that the failure to physically attach the Attachments to the Second Warrant is a fatal flaw making the Second Warrant constitutionally defective on its face because it lacks particularity.  Defendant also argues that even if the failure to physically attach the Attachments is not fatal standing alone, the failure to expressly incorporate Attachment A cannot be overcome.  Defendant also argues that the language used in the expressly, but incorrectly, incorporated Attachment B does not meet the particularity requirements of the Fourth Amendment.  Finally, Defendant argues that the Second Warrant is so facially defective that the good faith exception cannot save it.[7]

The Government argues the Attachments do not need to be physically attached to the Second Warrant for the Second Warrant to be valid.  The Government also admits what it describes as a "technical error" in the Second Warrant because the Second Warrant does not explicitly incorporate Attachment A (the items to be seized).  The Government also acknowledges Attachment B (the items to be searched) was not incorporated in the proper space on the Second Warrant.  Notwithstanding these errors, the Government argues the Second Warrant is valid

---

[7] Defendant's initial brief raised other issues about the copies of the warrant documentation provided by the Government in discovery.  For instance, Defendant complained that a copy of the First Warrant provided to him in discovery include an attachment A related to a T-Mobile telephone device utilized by Defendant and an attachment B related to seizing information from the telephone [Doc. 101-2 at Page ID # 657-59].  He argues this carelessness in discovery calls into question what documents were actually presented to Judge Steger.  While not condoning any inaccuracies in the documentation produced to Defendant in discovery, this report and recommendation will focus on the pertinent documentation, which is what is filed in the record as the Applications, Affidavits, and Attachments submitted to Judge Steger and the Warrants he issued.  The evidence at the hearing fully supports that the T-Mobile attachments were not attachments presented in connection with the Warrants at issue in spite of the uncertainty created by the discovery presentation.

because (1) even though Attachment B is incorporated at the incorrect place on the Second Warrant, the written description on the Second Warrant describing the place to be searched is sufficiently particular; (2) Attachment A, found within the Second Affidavit, is sufficiently particular to satisfy the particularity requirement and the Second Warrant "cross-references" the Second Affidavit; (3) the search was conducted entirely within the offices of the FBI, was guided by Moore, and both Moore and Rinaldi used and followed the Attachments to govern the search and seizure; and (4) the admitted "technical" violation did not prejudice Defendant. Alternatively, the Government argues the searching officials acted in good faith and exclusion is not a proper remedy.

While the issue of suppression in this case is ultimately resolved via application of the good faith exception, I will still address the main issues raised by Defendant as to each of the Warrants.

### 1. Language of Second Warrant Regarding Items to Be Searched

I will first address Defendant's argument that evidence obtained from the execution of the Second Warrant must be suppressed because the language used on the face of the Second Warrant was not sufficiently particular. It is not necessary to look to the language of Attachment B regarding the items to be searched to address the issue of particularity because the Second Warrant itself describes the property to be searched as: "property seized from the person and vehicle of [Defendant], located at the offices of the FBI, 633 Chestnut Street, Suite 540, Chattanooga, Tennessee 37450." [Doc 3 at Page ID # 15]. As to this language of the Second Warrant, Defendant argues it lacks particularity because it does not state whether all or only a subset of the property taken from Defendant was to be the subject of the Second Warrant. Defendant notes that the return lists seized property that was not included in the Second Warrant—including, for instance, a firearm and a bag.

12

Even without Attachment B, though, the Second Warrant does not wholly fail to identify its object; instead, by the Second Warrant's terms, it authorizes the search of identified property. It is true that the face of the Second Warrant leaves off further explanation about whether "all" property that was taken from Defendant's person and van or only "some" property was to be searched as argued by Defendant. Also as Defendant notes, there was property seized from the van and Defendant's person such as a firearm and a bag that is not listed on Attachment B. As established at the hearing, however, other than the property described in Attachment B, there were no other items of Defendant's property physically located at the FBI office in Chattanooga at the time. Thus, notwithstanding the attachment/incorporation issue, the Second Warrant's description of the items to be searched is sufficiently particular. No other person's property, not even Defendant's other property, was at risk of being searched based on the written description that appears on the face of the Second Warrant. In short, the face of the Second Warrant contains sufficient particularity for the items to be searched as there is no requirement that a search warrant physically attach or incorporate any attachments if the warrant itself meets the particularity requirements of the Fourth Amendment.

Moreover, Attachment B—which was incorporated in the Second Warrant, but not attached in spite of the Second Warrant stating that it was—fully meets the particularity requirement.[8] While Attachment B was incorporated in the incorrect space of the Second Warrant as admitted by the Government [Doc. 108 at Page ID # 749]—it does specifically list the subset of the seized property that was in the FBI office and was to be searched: cell phone, laptop, SanDisk card, and two thumb drives. Moreover, the Second Affidavit also clearly defines the property to be searched.

_____

[8] It should also be noted that Defendant raises no issues about the language used to describe the property to be seized listed in the unattached and unincorporated Attachment A.

13

In short, I **FIND** the Second Warrant satisfies the constitutional requirement of particularity in describing the property to be searched. As Defendant does not complain about the particularity of Attachment A, I will next address the attachment and incorporation issues.

## 2.    The Failure to Physically Attach/Incorporate Attachments

Defendant argues that without physical attachment of the Attachments, the Second Warrant contains no directive at all as to what Judge Steger may have determined there was probable cause to search and seize. Defendant also contends that without express incorporation of Attachment A, the Second Warrant contains no directive at all for what Judge Steger may have determined there was probable cause to seize. Either and both configurations of the Second Warrant violate the constitutional requirement of particularity according to Defendant.

Turning to the issue of attachment and incorporation, in *Groh v. Ramirez*, the United States Supreme Court held that when a "warrant did not describe the items to be seized *at all*," it "was so obviously deficient that we must regard the search as 'warrantless.'" *Groh*, 540 U.S. at 558. In so doing, the Court rejected the argument that an affidavit of probable cause, presented to the magistrate judge and then filed under seal, could save the warrant's validity: "The fact that the *application* adequately described the 'things to be seized' does not save the *warrant* from its facial invalidity. The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Id*. The Court held:

> "The presence of a search warrant serves a high function," and that high function is not necessarily vindicated when some other document, somewhere, says something about the objects of the search, but the contents of that document are neither known to the person whose home is being searched nor available for her inspection.

*Id*. at 557 (internal citation omitted) (quoting *McDonald v. United States*, 335 U.S. 451, 455 (1948)).

14

The warrant in *Groh* not only failed to describe the items to be seized, but also failed to

incorporate *any* document by reference. *Id*. at 558. In explaining its reasoning, the Court stated:

> We do not say that the Fourth Amendment prohibits a warrant from cross-referencing other documents. Indeed, most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant.

*Id*. at 557-58.

Following *Groh*, the circuits remain divided (as before) as to exactly what is required to

construe a warrant with reference to supporting documents. *See e.g.*, *Sanders v. Parrish*, 141 F.

App'x 412, 416 (6th Cir. 2005) ("[N]either the *Groh* court nor the *Baranski* court invalidated the

cure by incorporation principle."). In *Baranski*, the Sixth Circuit emphasized that "[w]hat doomed

the warrant in *Groh* was not the existence of a supporting affidavit that particularly described the

items to be seized, but the failure of the warrant to cross-reference the affidavit at all." 452 F.3d

at 439. As the Sixth Circuit held, "[w]ithout something on the face of the warrant indicating the

particulars of the items to be seized or incorporating a document that described those particulars,

the Court reasoned that it could not 'know whether the Magistrate was aware of the scope of the

search he was authorizing.'" *Id*. at 442 (quoting *Groh*, 540 U.S. at 561 n.4).

It is well settled in the Sixth Circuit that "[t]he particularity requirement may be satisfied

through the express incorporation or cross-referencing of a supporting affidavit that describes the

items to be seized, even though the search warrant contains no such description." *Richards*, 659

F.3d at 537 (citing *Baranski*, 452 F.3d at 439-40); s*ee also United States v. Evans Landscaping

Inc.*, 850 F. App'x 942, 948 (6th Cir. 2021) (observing the Sixth Circuit is among those Courts of

Appeals that have approved the use of incorporated documents to satisfy the particularity

requirement).

15

In *Evans Landscaping, Inc.*, the Sixth Circuit addressed a search warrant that identified by name the documents to be incorporated. The defendants argued that the incorporating language—"Attachment A" and "Attachment B"—was not sufficiently definite. The Sixth Circuit rejected this argument citing to several other courts that had done the same. *Evans Landscaping Inc.*, 850 F. App'x at 948. The Sixth Circuit also held:

> [I]t is of little import that these attachments were sub-documents appended to the warrant application presented to the magistrate judge, rather than directly attached to the warrant. Under *Groh*, law enforcement officers may incorporate by reference a search warrant application in many circumstances, including those present here, so "Attachment A" and "Attachment B" are nothing more than specific portions of the search warrant application that could be permissibly incorporated by reference. Accordingly, we affirm the district court's denial of the motion to suppress.

*Id.* (citation omitted); *see also United States v. Abdalla*, 327 F. Supp. 3d 1079, 1087 (M.D. Tenn. 2018) ("Incorporation requires suitable words of reference evidencing the magistrate's explicit intention to incorporate the affidavit. That said, the realities of administration of criminal justice, counsel against an overly exacting standard for determining when a warrant successfully incorporates a supporting affidavit, and, hence, there are no required magic words of incorporation. In fact, a warrant that stated 'upon the sworn complaint made before me there is probable cause to believe,' was deemed sufficient, as was the statement, 'See attached affidavit.'") (cleaned up), *aff'd.*, 972 F.3d 838 (6th Cir. 2020).

Defendant's argument—citing to the law of other circuits—that constitutional incorporation requires both express words of incorporation and physical attachment plainly fails [Doc. 109]. Defendant candidly recognizes the futility of this argument acknowledging that if a warrant has properly incorporated a document, the Sixth Circuit does not currently require that the incorporated document be physically attached to the warrant [Doc. 109 at Page ID # 760 (citing

16

*Baranski*)].  While Defendant argues this is an incorrect interpretation of the particularity requirements of the Fourth Amendment, and thus unconstitutional, he also concedes that this Court must abide the precedent set by the Sixth Circuit, not other circuits.  Thus, it is not necessary to belabor the mere failure to physically attach the Attachments to the Warrants at issue here.

Accordingly, I will turn to whether the Second Warrant satisfied the particularity requirement through the incorporation or cross-referencing of supporting attachments that describe the items to be seized.  In the instant case, Moore presented a one-page Second Warrant with a multi-page Second Application/Second Affidavit with Attachments.  The one-page Second Warrant was a form document filled out, in part, by the Government, and which contained blank spaces for Judge Steger to: (1) approve and sign the Second Warrant, (2) state the date and time when he approved the Second Warrant and (3) limit the time within which the Second Warrant could be executed.  As in *Evans Landscaping, Inc.*, the supporting documents specifically described the items that the agents sought to find and seize.  It is undisputed that Moore presented the Second Warrant, Second Application, and Second Affidavit to Judge Steger, who independently signed each of the documents.  *Id.*  Judge Steger also completed the Second Warrant, which was approved by his signature.  The Second Warrant stated the date and time at which it was approved and limited the search times.  Moore and Rinaldi testified that they had copies of all

17

Attachments when the Second Warrant was executed. In addition, the Attachments were present at the scene, although Defendant was not.[9]

The Second Warrant, however, expressly references only Attachment B (the location/items to be searched) and fails to explicitly incorporate or directly cross reference Attachment A in any direct way.[10] *Sanders* is instructive here. In *Sanders*, the search warrant "described the premises to be searched in the appropriate section" but, "[i]n the section of the form intended to describe the items to be seized, the description of the premises to be searched was inadvertently duplicated." *Sanders*, 141 F. App'x at 413. "As a result, the search warrant did not include any description of the items to be seized." *Id.* Moreover, "[t]he same duplication of the description of the premises to be searched and omission of the items to be seized plagued the affidavit[.]" *Id.* The homeowner brought a civil suit in federal court for violation of his Fourth Amendment rights. The Sixth Circuit rejected his claim and found that the case was not governed by *Groh*, as the warrant at issue, though lacking in particularity, was "cured" by the principle of incorporation. *Id.* at 416. In doing so, the Sixth Circuit noted the "curative documents" were attached to the warrant during the search, were "sufficiently incorporated into the warrant to search" the residence in question, and themselves "describe[d] with particularity the items to be seized." *Id.* at 416-17.

---

[9] "Neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure requires the executing officer to serve the warrant on the owner before commencing the search." *Groh*, 540 U.S. at 562 n.5; *see also Baranski*, 452 F.3d at 443 (in *Bivins* action holding the Fourth Amendment does not compel officers to present a warrant before executing a search); *Frisby v. United States*, 79 F.3d 29, 32 (6th Cir. 1996) ("The Fourth Amendment does not necessarily require that government agents serve a warrant, or an attachment thereto, prior to initiating a search or seizing property."); *United States v. Pritchett*, 40 F. App'x 901, 907 (6th Cir. 2002) (same).

[10] All "cross references" argued by the Government are tangential at best. Moore did not intend to rely on a cross reference, he assumed Attachment A was both attached and expressly incorporated into the Second Warrant. It is not necessary to belabor the issue as to exactly what a suitable cross reference might be, however, because the good faith exception easily applies to the Second Warrant.

18

In *United States v. Friedmann*, No. 3:21-CR-00095, 2022 WL 950871, at *14 (M.D. Tenn. Mar. 29, 2022), like here, there was no evidence that supporting documents were physically attached to the warrant. The court held:

> The Warrant itself, while not a model of clarity, expressly cross-references the Affidavit through the use of the words, "Proof by Affidavit having been made before me." Incorporation requires suitable words of reference evidencing the magistrate's explicit intention to incorporate the affidavit. At the same time, the realities of administration of criminal justice counsel against an overly exacting standard for determining when a warrant successfully incorporates a supporting affidavit, and there are no required magic words of incorporation. Courts have deemed sufficient such language as "upon the sworn complaint made before me there is probable cause to believe," and "see attached affidavit."
>
> Based on the Sixth Circuit's liberal application of the "cure by incorporation" principle, the court finds that the magistrate's reference to the Affidavit, in conjunction with his having actually signed the Affidavit that accompanied the Search Warrant, is sufficient to incorporate by reference the Affidavit into the Search Warrant. The Affidavit itself, despite not accurately describing the items to be seized in the appropriate section of the form, nonetheless describes in substantial detail the facts supporting probable cause and the specific items the police sought to seize—the plastic crates being stored at April Marone's residence at Alex Friedmann's request. The Search Warrant, therefore, is not invalid for failing to describe with adequate particularity the items to be seized.

*Id.* at *15 (internal citations and quotation marks omitted).

It is obvious oversight that Attachment A—the list of items law enforcement was authorized to seize—is neither physically attached nor incorporated by express reference in the Second Warrant. It is not, however, necessary to determine if the magnitude of this error is merely the sort of clerical error typically excused or a substantive defect in the Second Warrant that violates the Fourth Amendment. Even if the particularity requirement of the Fourth Amendment is not satisfied in the Second Warrant, the agents' good faith reliance upon the issuance of the

19

Second Warrant by Judge Steger precludes application of the exclusionary rule as addressed below.

### 3. Good Faith

The Government argues for application of the good faith exception to the exclusionary rule pursuant to *United States v. Leon*, 468 U.S. 897, 918-21 (1984) and its progeny. Defendant argues to the contrary. The Government's argument is persuasive.

"The Supreme Court's jurisprudence is clear: Whether the exclusionary sanction is appropriately imposed in a particular case . . . is 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.'" *United States v. Buford*, 632 F.3d 264, 275 (6th Cir. 2011) (alteration in original) (quoting *Leon*, 468 U.S. at 906). The Fourth Amendment protects citizens from the government's oppressive use of general warrants by requiring a neutral magistrate to provide oversight. I **FIND** that is exactly what happened here. Judge Steger, as a neutral magistrate judge, reviewed the Applications and all of the supporting documents and exercised his judgment in authorizing the Warrants. In other words, he ensured probable cause and that general warrants were not issued.

The Supreme Court recognized, in *Leon*, an exception to the exclusionary rule when an officer acts in reasonable reliance on a search warrant's validity. 468 U.S. at 913-23. Defendant argues the Government did not meet its burden to prove good faith because the Warrants were facially deficient with a focus on what Moore did not testify. Specifically, Defendant argues Moore did not testify (1) that he thought the Attachments were physically affixed to the Warrants when they were signed; (2) that he was unaware of the need for physical attachment; (3) that the Warrants had be obtained in a rush; (4) that Judge Steger specifically assured him that the Warrant met the particularity requirements; (5) that he or a reasonable officer thought Attachments were

not required because the Warrants were not sealed; or (6) that policies and procedures exist to prevent the issuance of warrants without proper attachments or incorporation [Doc. 117 at Page ID # 912-13]. Defendant's arguments are not persuasive.

Certainly, the good faith exception does not apply in certain situations, including "where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient." *United States v. Hython*, 443 F.3d 480, 484 (citing *Leon*, 468 U.S. at 923). However, where the warrant is facially deficient, "[o]fficers poised to conduct a search should be able to ascertain that such warrant fails to offer sufficiently detailed instruction and instead leaves them guessing as to their task." *United States v. Towne,* 997 F.2d 537, 549 (9th Cir. 1993) (internal citation omitted) (holding that where the court file was missing an attachment incorporated by reference in a search warrant, court may consider extrinsic evidence to determine if attachment accompanied warrant when search was authorized and carried out, and whether to treat the missing attachment as part of the warrant). That was not the situation for Moore and Rinaldi—they were not unaware of or left guessing as to their tasks.

Moreover, the exclusionary rule applies only "where its remedial objectives are thought most efficaciously served," *Arizona v. Evans*, 514 U.S. 1, 11 (1995) (citing *Leon*, 468 U.S. at 908), and "where it 'result[s] in appreciable deterrence,'" *Herring*, 555 U.S. at 141 (alteration in original) (quoting *Leon*, 468 U.S. at 909). "[T]o the extent that application of the exclusionary rule could provide some incremental deterrent, that possible benefit must be weighed against [its] substantial social costs." *Id.* (alteration in original) (quoting *Illinois v. Krull*, 480 U.S. 340, 352-53 (1987)). The decision to suppress evidence "turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct." *Id.* at 137. The exclusionary rule does "not bar the government's introduction of evidence obtained by police officers acting in objectively reasonable

21

reliance on a search warrant that is subsequently invalidated." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*, 468 U.S. at 918-921).

The Sixth Circuit "has been unequivocal in holding that 'a determination of good-faith reliance, like a determination of probable cause, must be bound by the four corners of the affidavit." *United States v. Waide*, No. 21-5827, 2023 WL 1961073, at *10 (6th Cir. Feb. 13, 2023) (quoting *Laughton*, 409 F.3d at 751).[11] "A court reviewing an officer's good faith under *Leon* may look beyond the four corners of the warrant affidavit to information that was known to the officer and revealed to the issuing magistrate." *United States v. Frazier*, 423 F.3d 526, 535-36 (6th Cir. 2005). The record in this case is clear that Judge Steger was provided with all of the supporting documentation, including the Attachments.

I **FIND** the Second Warrant was not so "facially deficient . . . that the executing officers [could not] reasonably presume it to be valid." *Leon*, 468 U.S. at 923; *cf. Sheppard*, 468 U.S. at 988, and 988 n.5 (officers reasonably relied on validity of warrant even where "the description in the warrant was completely inaccurate and the warrant did not incorporate the description contained in the affidavit"). This is not a case "in which a 'simple glance' at the warrant would reveal deficiencies glaring enough to make reliance on it unreasonable." *United States v. Castro*, 881 F.3d 961, 966 (6th Cir. 2018) (citing *United States v. Watson*, 498 F.3d 429, 432 (6th Cir. 2007)).

---

[11] Courts evaluate a search warrant affidavit "on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *Hines*, 885 F.3d at 926 (quoting *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc)); *Greene*, 250 F.3d at 479 ("Courts should review the sufficiency of the affidavit in a commonsense, rather than hypertechnical manner."). In reviewing the propriety of a warrant affidavit, "line-by-line scrutiny of the underlying affidavit is improper when reviewing the issuing judge's probable cause determination." *See Hines*, 885 F.3d at 923-24 (citing *Allen*, 211 F.3d at 973).

Defendant has pointed to no misconduct by law enforcement that should be deterred. To the contrary, Moore did precisely what the Supreme Court has instructed in light of the strong preference for searches conducted pursuant to warrants under the Fourth Amendment. *See Illinois v. Gates*, 462 U.S. 213, 236 (1983) (holding that officers obtaining a warrant before conducting a search reduces the perception of unlawful police conduct, and assures the individual whose property is searched of the lawful authority, need for, and limits of the search). The exclusionary rule is not triggered here because the officers acted in good faith reliance on the issued Warrants. I **FIND** that the officers' reliance on the Second Warrant was objectively reasonable, and that, even if particularity was lacking in the language of the face of the Warrant and/or the Attachments, application of the exclusionary rule would not provide a deterrent benefit that would outweigh the substantial social costs of exclusion. *See Leon*, 468 U.S. at 922; *Herring*, 555 U.S. at 141. The exclusionary rule was adopted to deter unlawful searches by police, not to punish the clerical errors of prosecutors and judges. *See Sheppard*, 468 U.S. at 990.

Accordingly, I **FIND** all evidence obtained pursuant to the Second Warrant is admissible under the circumstances at hand. *See e.g., United States v. Russell*, 960 F.2d 421, 423-25 (5th Cir. 1992) (affirming denial of motion to suppress where agent acted in good faith by executing a search warrant that was missing the attachment that listed items to be seized, holding the good faith exception applied where the warrant was "defective because of clerical error" of omission of list of items to be seized, and finding "nothing to be gained by laying fault for this apparent clerical error at [IRS agent's] feet"); *United States v. Maxwell*, 920 F.2d 1028, 1034 (D.C. Cir. 1990) (good faith exception applied when affidavit attached but not specifically incorporated); *United States v. Mahmood*, No. 6:13-CR-32, 2014 WL 12705001, at *3 (E.D. Tex. May 1, 2014) (applying good faith exception despite the inadvertent failure to physically attach attachment A (describing items

to be seized) and attachment B (describing property to be searched) to the warrant where probable cause determination was made by a magistrate judge, the FBI agent's affidavit provided specific information of the objects of the search, the agent was both the executing officer and the affiant, and the agent testified that the additional officers making the search knew what was to be searched).

Consequently, I recommend that the motion to suppression evidence obtained as a result of the Second Warrant be denied because the good faith exception to the exclusionary rule applies.

**B.    First Warrant**

Defendant also argues for suppression in connection with the First Warrant because the Attachments providing particularity were not physically attached to the First Warrant. As noted above, Sixth Circuit precedent does not require physical attachment. Moreover, under the authority addressed above, the First Warrant properly incorporated both Attachments.

Defendant's second argument is that even if the Court finds the Attachments may be considered in spite of the failure to physically attach them, the language in incorporated Attachment A delegated the probable cause determination to the officers executing the First Warrant in violation of the particularity requirement. The Government disagrees.

Specifically, Defendant argues Attachment A lacks particularity based on the language quoted below:

> This search shall include all rooms and garages or storage spaces, attached or unattached, that are associated with **SUBJECT PREMISES**; any containers, locked or unlocked, located within or attached to the **SUBJECT PREMISES**; any vehicles parked within the vicinity of the **SUBJECT PREMISES** for which there is probable cause to believe are under the dominion and control of Mark Alan DEAKINS, as evidenced by any keys, registration documents, or other evidence found inside the **SUBJECT PREMISES**; and any computers, cell phones, or other digital media devices found in **SUBJECT PREMISES** or within vehicles, for

24

which there is probable cause to believe pertain to Mark Alan DEAKINS, as evidenced by being stored in a place with other personal effects of Mark Alan DEAKINS, or other evidence found inside the **SUBJECT PREMISES**.

[Doc. 2 at Page ID # 19 (emphasis in original/highlighting added)]. The parties' dispute centers on whether the highlighted phrase above ("for which there is probable cause to believe pertain to [Defendant])") relates to just the vehicles or also relates to the computers, cell phones, or other digital media devices found in Defendant's vehicles or home.

As to the language in Attachment A, the Government argues the best reading of the disputed language is that it only relates to the search of electronic devices found in vehicles at the premises. In other words, the only determination left to the executing officers was whether a vehicle that might be found on the premises was associated with Defendant, and even that determination was contingent on objective indicia set forth in Attachment A: keys, registration documents, or other evidence. Apparently recognizing the language of Attachment A is not beyond debate, the Government notes its reading of Attachment A is consistent with paragraph 12 in the First Affidavit, which identifies four vehicles either registered or associated with Defendant, one of which, a van, had recently been seen at the premises. As the only evidence recovered during the search conducted pursuant to the First Warrant was found inside the home and no vehicles were searched, it is not necessary to determine particularity in the context of the authorization to search the vehicles.[12]

Further, the Government argues the language in Attachment A is specific about searching the home itself—"[t]his search shall include all rooms and garages or storage spaces . . . that are

---

[12] The Government argues it added this language to ensure that any other individual's car located on the premises was not subject to search. As no vehicles were searched, the Court does not need to address the relevance, or lack thereof, of the Government's intent.

25

associated with the [premises]" as well as "any computers, cell phones, or other digital media devices found in [the premises] . . . ." *Id*. To attempt to address Defendant's argument that the disputed section should be read as delegating the determination of probable cause to search computers found in the home, the Government argues such a reading makes the First Warrant an anticipatory search warrant; that is, only upon finding any personal effects of Defendant in the house could the officers seize and search the computers. The Government argues that even if so read, the triggering event occurred, so the Fourth Amendment was not violated.

Defendant disagrees with the Government's position regarding an anticipatory warrant and argues the Government is incorrect when it claims that Attachment A's directive for an on-the-scene probable cause determination applied only to vehicles. Specifically, Defendant argues Attachment A delegates the probable cause determination to the executing officer to search not only "any vehicles parked within the vicinity of the SUBJECT PREMISES, for which there is probable cause to believe are under the dominion and control of" Defendant, but also "any computers, cell phones, or other digital media devices found in SUBJECT PREMISES . . . for which there is probable cause to believe pertain to" Defendant [*id.*].

Both sides agree that a warrant cannot constitutionally delegate the probable cause determination to an on-scene law enforcement officer. *See, e.g., Worthington v. United States*, 726 F.2d 1089, 1094-95 (6th Cir. 1984) (Contie, J., concurring) ("A general warrant permits general exploratory rummaging through a person's belongings. Such a warrant violates the particularity requirement in two respects: It permits the seizure of items where the warrant actually describes others and it gives law enforcement officials discretion to determine what objects will be seized and what objects will not." (citations omitted)).

I find the Government has the better argument regarding the disputed language. Moreover, it is not necessary to belabor the parties' arguments. Even if the language is ambiguous, any after-the-fact, line-by-line scrutiny of search warrants is "inappropriate," and should "not take the form of de novo review." *Gates*, 462 U.S. at 236, and 246 n.14. Moreover, the Government's good faith argument also applies as to any issue regarding the language in Attachment A, especially given the "great deference" to be accorded the issuing magistrate judge's decision to authorize the First Warrant. *See Spinelli v. United States*, 393 U.S. 410, 419 (1969).

As noted above, although the Attachments were not physically attached as claimed on the face of the First Warrant, they were sufficiently incorporated to be considered under applicable precedent. I **FIND** that the officers' reliance on the First Warrant was objectively reasonable. Moreover, even if particularity was lacking in the language of Attachment A, application of the exclusionary rule would not provide a deterrent benefit that would outweigh the substantial social costs of exclusion. *See Leon*, 468 U.S. at 922; *Herring*, 555 U.S. at 141. Accordingly, I **FIND** all evidence obtained pursuant to the First Warrant, like the Second Warrant, is admissible and I recommend that the motion to suppression evidence obtained as a result of the First Warrant be denied.

27

## IV.     CONCLUSION

For the reasons stated herein, I **RECOMMEND**[13] Defendant's second motion to suppress

[Doc. 101] be **DENIED**.

ENTER:

s/ *Susan K. Lee*

SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[13] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusory and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

28