UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| | ) | Case No. 1:21-cr-58 |
| v. | ) | |
| | ) | Judge Atchley |
| | ) | |
| MARK ALAN DEAKINS | ) | Magistrate Judge Lee |
| | ) | |

# FINDINGS OF FACT & CONCLUSIONS OF LAW

This matter came before the Court for a bench trial, which was held on April 11-12 and May 11, 2023. The Grand Jury named the Defendant, Mark Alan Deakins, in Counts One through Five of the Third Superseding Indictment [Doc. 75] ("Indictment") charging him with: Count One, Transportation of a Minor in violation of 18 U.S.C. § 2421; Counts Two and Three, Exploitation of a Minor to Produce Images of the Exploitation in violation of 18 U.S.C. § 2251(a); Count Four, Possession of Child Pornography[1] in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2); and Count Five, a status offense for committing the allegations alleged in Count Three while on the Sex Offender Registry in violation of 18 U.S.C. § 2260A.

In accordance with the parties' request under Federal Rule of Criminal Procedure 23(c) and having reviewed the parties' post-trial submissions and closing arguments, as well as the record, the Court now makes the following findings of fact and conclusions of law.

---

[1] At trial, the terms "child sexual abuse material" ("CSAM") and "child pornography" were used interchangeably by FBI Special Agent Samuel Moore due to the modern naming convention at the FBI shifting from "child pornography" to "child sexual abuse material." [Doc. 140 at 112-113]. The Court adopts the interchangeable use for clarity, particularly when citing to testimony from SA Moore.

## I. FINDINGS OF FACT

The investigation into the instant case began when a black pouch containing identification cards and seven thumb drives containing sexually explicit material was found in Georgia.[2] [Trial Transcript, Doc. 140 at 117-120]. FBI Special Agent Samuel Moore examined the thumb drives. [*Id.* at 124]. SA Moore testified that these thumb drives contained organized filings of images bearing multiple children's names. [*Id.* at 125-127]. The prosecution centered around the exploitation of three children with the initials C.C., B.A., and J.G. [*Id.* at 127].

### A. Findings as to C.C.

At trial, the Government showed that the Defendant started "playing ball" with C.C. and other neighborhood kids when C.C. was "about 11 years old." [*Id.* at 20]. In turn, C.C. looked up to the Defendant as a father figure in lieu of his absent biological father. [*Id.* at 21]. While C.C. was still 11, during 1994, the Defendant initiated sexually abusive conduct toward C.C. [*Id.* at 21].[3] The Defendant's conduct also turned sexual with numerous other neighborhood children. [*Id.* at 21-22]. C.C. testified that the Defendant created images of the sexual abuse, remembering seeing cameras during some of their sexual encounters. [*Id.* at 22]. The Government introduced Exhibit 4, depicting numerous "naked pictures" of C.C. and the Defendant. [*Id.* at 27].

The abuse that started when C.C. was 11 continued throughout a later trip to Florida when C.C. was 16 years old. [*Id.* at 31-32]. The Defendant picked C.C. up from his grandmother's house on Hixson Pike in Hamilton County, Tennessee, which is located in the Eastern District of Tennessee, and they drove to the state of Florida slightly before Y2K.[4] [*Id.* at 17-18]. They stayed

---

[2] Photographs of the identification cards were entered into evidence as Exhibit 16A. They consisted of a commercial driver's license and a State of Tennessee Board of Probation and Parole offender ID for Mark Deakins.

[3] The evidence proffered in open court showed that the Defendant was born on January 22, 1960, making the Defendant in his mid-30s at the time this abusive conduct started. [*Id.* at 116-119].

[4] At trial, C.C. testified that the trip to Florida occurred around the turn from 1999 to 2000, an event referred to at that time and in trial testimony as Y2K.

together in Florida for several months, at least into 2000.[5] [*Id*. at 17-18]. Both the Defendant and C.C. drove the Defendant's vehicle during some of the trip, despite C.C. not having acquired his driver's license at the time. [*Id*. at 35].

While in Florida, the Defendant's sexual abuse of C.C. continued. [*Id*. at 32]. The Government introduced Exhibit 6, depicting the Defendant performing oral and anal sex on C.C. while they were in Florida. [*Id*. at 32]. SA Moore located and photographed the apartment where the video was recorded [*id*. at 176], and C.C. identified the current photographs as the same location where the abuse took place. [*Id*. at 33-34].[6]

### B.  Findings as to B.A.

B.A. met the Defendant in 2005 or 2006 when the Defendant was doing construction work on a house next door to where B.A. lived. [*Id*. at 39].[7] Eventually, B.A. began working for the Defendant performing construction odd-jobs. [*Id*. at 41]. On one occasion, B.A. broke a window, and the Defendant "dared" B.A. to get naked and go outside in order to "cover the cost of the window." [*Id*. at 42-43]. B.A. complied, and when he returned inside, the Defendant "put his mouth on [B.A.'s] penis." [*Id*. at 43].

Several other sexually abusive incidents took place in a house located on Culver Street in Red Bank – a municipality in Hamilton County, Tennessee, which is located in the Eastern District of Tennessee. [*Id*. at 43-44 and 176-177]. The Defendant is associated with that address, having listed it on his sex offender registry documentation. [*Id*. at 177]. Numerous videos and images of sexually abusive conduct toward B.A. were produced at the Culver Street location. [*Id*. at 64-65]. These recorded instances ranged from the Defendant putting his mouth on B.A.'s penis and

---

[5] Exhibit 41 shows that C.C. was born on July 15, 1983, making him 16 years old in January 2000. [*Id*. at 19].
[6] The photographs were introduced as Exhibits 35A and 35B.
[7] Exhibit 42 shows B.A. was born on February 22, 1995, making him approximately 11 years old when the Defendant first met B.A.

attempting to penetrate B.A.'s anus with the Defendant's penis [*id*. at 46], to the Defendant touching B.A.'s genitalia, and B.A. performing anal sex on the Defendant. [*Id*. at 67]. These recordings were admitted into evidence and played in Court. [*Id*. at 65-68].

The devices used to create the images of B.A. were transported in interstate commerce. First, many of the images and videos of B.A. were taken from a device the Defendant secretly used to videotape B.A. while B.A. was unaware he was being videotaped. [*Id*. at 71]. SA Moore testified that no such devices capable of this type of recording are made entirely within the state of Tennessee. [*Id*. at 184]. Second, the Defendant owned a Canon camera. [*Id*. at 49-50]. In one of the sexually abusive encounters, the Defendant used the Canon camera to photograph B.A.'s penis exposed next to a measuring stick. [*Id*. at 66]. Canon cameras are made in Japan, and there are no video cameras made entirely from components manufactured in Tennessee. [*Id*. at 184].

### C. Findings as to J.G.

J.G. was born on July 2, 2010. [*Id*. at 86-87]. Shortly after the death of J.G.'s father figure in June 2017, J.G. began spending more time with the Defendant, with much of that time in the Defendant's house.[8] [*Id*. at 82-84]. Numerous sexually explicit images depicting J.G., or both J.G. and the Defendant in the Defendant's house, were admitted into evidence. [*Id*. at 93 referencing Exhibits 9-15]. Among those images were the following: 1) a photograph including the Defendant where J.G. had lipstick or red marker on his face, while J.G.'s penis was exposed; 2) a photograph depicting the Defendant's hand and J.G.'s penis; 3) a photograph depicting J.G. in a specific pair of underwear that J.G. recognized, along with the Defendant's hand, and J.G.'s exposed penis; 4) a photograph of J.G. measuring his penis at the direction of the Defendant; 5) a photograph of J.G. in the shower; 6) a photograph of J.G. in the Defendant's bed with J.G.'s penis exposed; 7) a

---

[8] The Defendant's residence at the time was in Soddy-Daisy, Tennessee, which is located in the Eastern District of Tennessee. [Doc. 140 at 80].

photograph of the Defendant's penis and J.G.'s hand; 8) a photograph in which the Defendant and J.G.'s penises are exposed next to each other; and 9) a video of J.G. and the Defendant in which J.G. is using a mirror to look at his anus because it was bleeding. [*Id*. at 94-104]. Testimony and comparative images from SA Moore showed that the above-mentioned photos and videos were taken at the Defendant's house. [*Id*. at 178-179].

All the photos depicting J.G. included EXIF data.[9] [*Id*. at 145]. Multiple of these images contained EXIF data showing they were created by a Samsung camera. [*Id*. at 145-148]. SA Moore testified that Samsung devices are manufactured in South Korea. [*Id*. at 144]. On cross-examination, SA Moore testified to three possible reasons that the EXIF data was not modified or altered in this case: 1) there was no logical reason to believe the defendant changed the EXIF data from exculpatory to inculpatory, that is, there is no logical reason for the Defendant to change the EXIF data to show a Samsung device was used; 2) there is no logical reason to believe a third party would have taken the Defendant's phone, changed the EXIF data, and returned it to him; and 3) there was no remnant evidence of a third party app on the phone that would have been used to change the EXIF data. [*Id*. at 192]. In short, the evidence shows the Defendant took numerous sexually explicit images of J.G. when he was 6-7 years old using a South Korean-made Samsung camera.

### D. Other Findings

Seven thumb drives and identical digital copies corresponding with each thumb drive were admitted into evidence. [*Id*. at 122, 128-133, referencing Exhibits 17A-23A/17C-23C]. SA Moore testified that all seven thumb drives were accessed at some point by all three computers on the

---

[9] SA Moore testified that EXIF means exchangeable image file format – a type of data associated with images that can include details such as date, time, name/make of the device used, and location data related to the image in question. [*Id*. at 145].

main floor of the Defendant's house, and that four of them had accessed the computer in the Defendant's basement. [*Id*. at 153-154]. It is undisputed that the thumb drives contained numerous images of CSAM including sexually explicit images of the defendant interacting with C.C., B.A., J.G., and others. [*Id*. at 133-141]. One of the thumb drives [Exhibit 19] was shown to hold the same images of J.G. that contained the Samsung EXIF data. [*Id*. at 142, 145-148]. Three other thumb drives [Exhibits 20, 22, and 23] were shown to contain numerous CSAM images downloaded from the internet.[10] [*Id*. at 150-153].

SA Moore found four computers and numerous data storage devices in a June 3, 2021, search of the Defendant's house. [*Id*. at 154, 160-174, referencing Exhibits 16-32]. An image downloaded from the computer entered as Exhibit 27 showed C.C. and the Defendant standing side-by-side outside with their genitals exposed. [*Id*. at 164]. Internet usage history from the same computer included searches using the terms "naked young boy," "naked young teen boy," "cute teen boys," "gay-teen-studio," and "young-cuming," among others. [*Id*. at 164]. SA Moore testified that Exhibit 27B included downloads consistent with those searches along with attribution evidence to the Defendant, including evidence of checking and receiving emails from markdeakins60@gmail.com. [*Id*. at 165]. Another computer, whose contents were entered as Exhibit 28B, contained sexually explicit images of C.C. [*Id*. at 168].[11] Three Iomega storage devices found in the Defendant's house contained downloaded images of CSAM, some of known victims of child sexual abuse and others appearing to have originated in Russia, Ukraine, and other

---

[10] During the trial, SA Moore testified that Tumblr's servers, one of the websites from which the CSAM was downloaded, were in California. After the close of the trial, SA Moore learned that after some corporate acquisitions, it is no longer clear where Tumblr's servers are located. As such, the United States stipulates that it cannot precisely state the location from which these CSAM images (from Exhibit 20) were downloaded, and it does not rely on the location of the Tumblr servers as proof of interstate nexus.

[11] There is a scrivener's error in the record here, incorrectly stating Exhibit 28B was received into evidence as "Government's Exhibit 2B". [Doc. 140 at 168 lines 11-12]. However, it is clear from the record as a whole that the Court admitted Exhibit 28B.

Eastern European countries. [*Id*. at 168-172]. Finally, the computer found in the basement, Exhibit 32, contained approximately 1,500 CSAM images. [*Id*. at 174].

The proof at trial showed that the Defendant became a "person required to register" as a sex offender in 2002, and that he remained a registered sex offender until he was arrested in this case, including through the relevant time frame alleged in Count Three. [*Id*. at 115]. A sampling of his registration documents that begin in 2002 and continue through 2019 were introduced as Exhibit 44. [*Id*. at 116]. The related offense, Count Five, was uncontested at trial, rising or falling upon a conviction or acquittal of Count Three.

## II. CONCLUSIONS OF LAW

The Court must now determine whether the Government has carried its burden of proof on the charges alleged in the Third Superseding Indictment.

### A. Count One: Transportation of a Minor

To show a violation of 18 U.S.C. § 2421, the Government must prove the following beyond a reasonable doubt:

> i. The Defendant knowingly transported C.C. in interstate commerce; and
>
> ii. At the time of such transportation, the Defendant intended to engage in any sexual activity for which any person could have been charged with a criminal offense, here: statutory rape, which under Florida Statute 794.05, is violated when a person 24 years of age or older engages in sexual activity with a person 16 or 17 years of age.

The evidence at trial showed that the Defendant had sexually abused C.C. since C.C. was 10-11 years old. Further, the evidence showed that C.C. and the Defendant were in Florida around the turn of the century (1999-2000), when C.C. was 16 years old and the Defendant was over the age of 24. The Court admitted evidence that the Defendant engaged in prohibited sexual activity while they were in Florida.

Defense counsel argues that the Government was required to prove C.C. was not legally emancipated or, in the language of the Florida statute, that C.C. had not removed "the disabilities of nonage." [*Id*. at 206-207]. However, defense counsel is mistaken – the disabilities of nonage is not an element of the Florida offense; rather it is an affirmative defense. *See Hodge v. State*, 866 So. 2d 1270, 1272 (Fla. Dist. Ct. App. 2004) (holding that, under 794.05, the disabilities of nonage is affirmative defense, rather than an element of the crime).

Defense counsel further argues that the Government failed to prove the Defendant's purpose or intent. [Doc. 140 at 205-206]. However, the Sixth Circuit has determined that "[i]llicit sexual conduct need not be the defendant's only purpose for travel, or even his dominant purpose." *United States v. Johnson*, 775 F. App'x 794, 798 (6th Cir. 2019); *see United States v. Harris*, 480 F.2d 601, 602 (6th Cir. 1973). Rather, the illicit behavior must be one of the purposes motivating the transportation, but it "need not be the dominant purpose." *United States v. Cole,* 262 F.3d 704, 709 (8th Cir. 2001). The ongoing sexual abuse of C.C. from the age of 10-11 supports a finding that further sexual abuse was a motivating purpose in transporting C.C. to Florida.

Neither the Florida statute nor the federal statute require that the Government prove the Defendant knew C.C.'s age. In Florida, statutory rape is a strict liability crime meaning the state is not required to prove the defendant's knowledge of the minor's age, and ignorance is not a defense. *State v. Washington*, 114 So.3d 182, 189 (Fla. Dist. Ct. App. 2012). Florida statute 794.05 is a strict liability crime and therefore "lack of criminal intent" and "mistake of age" are not viable defenses. *Hodge* at 1273. The charged federal statute is the same. *See United States v. Daniels*, 653 F.3d 399, 410 (6th Cir. 2011) (interpreting similar statute § 2423; holding that a defendant who knows "he is treading close to the line in transporting a young person to engage in illicit sexual activity…[bears] the risk that the person transported is underage").

Lastly, defense counsel argues that because the Defendant permitted C.C. to drive during some of the trip to Florida, the Government's evidence of "transportation" was insufficient. [Doc. 140 at 207]. This theory ignores the inchoate principles of Title 18 U.S.C. § 2: aiding, abetting, inducing, procuring, and causing another person to commit an offense, none of which need to be pled in the indictment, all of which support liability in this case if the Defendant allowed C.C. to drive on a trip across state lines. *See United States v. McGee*, 529 F.3d 691, 695 (6th Cir. 2008) (reaffirming the "long held" rule that inchoate theories of liability in 18 U.S.C. § 2 need not be charged in an indictment.) Additionally, there is appellate precedent expanding "transportation" to include instances where "the evidence shows that the defendant personally or through an agent performed the proscribed act of transporting." *United States v. Holland*, 381 F.3d 80, 86 (2d Cir. 2004). Transportation also includes instances where the defendant transports a minor without "physically accompanying [the minor]." *United States v. Johnson*, 132 F.3d 1279, 1285 (9th Cir. 1997). Regardless of whether C.C. did drive the vehicle at some point during the travel to Florida, the Defendant caused the transportation of a minor across state lines. Accordingly, the Government proved beyond a reasonable doubt that the Defendant committed the offense alleged in Count One of the Third Superseding Indictment.

### B. Count Two: Exploitation of B.A.

To show a violation of 18 U.S.C. § 2251(a), the Government must prove beyond a reasonable doubt:

  i. That the Defendant used, persuaded, induced, enticed, or coerced B.A., who was a minor at the time, to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct; and
  ii. That the visual depiction was produced using materials that were transported in interstate or foreign commerce.

The evidence at trial showed the Defendant used one device (an unidentified hidden

recording device) that must have traveled in interstate commerce to capture his use of another device (a Canon camera) that also must have traveled in interstate commerce to photograph B.A. while B.A.'s penis was exposed. It was uncontested that Canon cameras are made in Japan, and there are no devices made entirely in the state of Tennessee that could have been the device filming the Defendant exploiting B.A. The record also clearly depicts the Defendant engaging in prohibited sexually explicit conduct with a minor. Accordingly, the Government proved beyond a reasonable doubt that the Defendant committed the offense alleged in Count Two of the Third Superseding Indictment.

The Defendant argues that due to legislative history and textual changes in 18 U.S.C. § 2251(a), the Government failed to prove Counts Two and Three at trial, ultimately asserting that the Government has not proven beyond a reasonable doubt either the requisite intent for making a particular image or the jurisdictional basis of that image.[12] The Defendant asserts the Government must match any alleged abuse with a specific image and a sufficient jurisdictional hook. He claims they have not. After review, the Court disagrees that the Government has failed to meet its burden of proof.

While Congress has amended § 2251(a) seven times since its inception in 1996, the core elements relied upon by the Government in Counts Two and Three remain unchanged.[13] In 1998, Congress added an *alternative* jurisdictional hook, whereby the statute is violated when a person produces an exploitive image with material that has been transported in interstate commerce. That alternative element remains unchanged since 1998. 18 U.S.C. § 2251(a). The subsequent amendments to § 2251(a) have added alternative means of violating the statutes, while none have

---

[12] The Defendant has asserted numerous times that the images entered into evidence were not the original images and were potentially copies of copies of copies of the originals.
[13] The core elements relied upon by the Government are 1) using a minor to create a sexually explicit image; and 2) creating the image with material that has been transported in interstate commerce.

removed, revoked, or limited the original core elements. Ultimately from 1998 to the present, the statute is violated when a defendant exploits a minor to produce an image using a device made from material that has been transported in interstate commerce. The evidence clearly shows the Defendant sexually exploiting a minor, while using such a device to produce an image of the prohibited conduct.

The most current Sixth Circuit jury instructions further solidify the two core elements relevant here – using a minor to create a sexually explicit image and using materials that have been transported in interstate commerce. *See* Pattern Crim. Jury Instr. 6th Cir. 16.01 (2023). The instructions also define what it means to "use" a minor as: "[a] defendant 'uses' a minor if he photographs the minor engaging in sexually explicit conduct." *Id*.

Defense counsel also argues that *United States v. Lively*, 852 F.3d 549 (6th Cir. 2017), applies to this case. It does not, and even if it did it would support a finding of guilt here. In *Lively,* the defendant's friend produced both hard-drive images and memory card images of the defendant sexually abusing a boy. The court found that the third-party production of hard-drive images from the memory card images did not mean the defendant was guilty under § 2251(a) because there was no evidence in the record suggesting that when the defendant sexually abused the boy, he did so for the purpose of producing the hard-drive images. However, they upheld the conviction, concluding that the defendant did sexually abuse the boy for the purpose of producing the memory card images. In sum, the *Lively* court held that third-party production of a copy of an image of a defendant abusing a child is not the original image for which a defendant exploited a child with respect to §2251(a). *Id*. at 560-61. Here, the Government's evidence is that the original images were produced by the Defendant (not a third party) using devices that had been transported in interstate commerce. In addition, the evidence shows that the Defendant sexually abused his

victims for the purpose of producing the original images. In both Count Two relating to B.A. and Count Three relating to J.G., the devices used to capture the victims' images were transported in interstate commerce.[14] In both instances, the Government is not relying on the origin of any subsequent devices used to make copies to satisfy the interstate nexus of the offenses – rather, they rely on the origin of the original recording devices. There is no dispute that the original recording devices were transported in interstate commerce.

### C. Count Three: Exploitation of J.G.

To show a violation of 18 U.S.C. § 2251(a), the Government must prove beyond a reasonable doubt:

    i. That the Defendant used, persuaded, induced, enticed, or coerced J.G., who was a minor at the time, to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct; and
    ii. That the visual depiction was produced using materials that were transported in interstate or foreign commerce.

The evidence at trial showed sexually explicit images of J.G. made by the Defendant at the Defendant's house. SA Moore's testimony regarding the EXIF data proved that the images were created using a Samsung cell phone, and the Government offered uncontested evidence that Samsung cell phones are manufactured in South Korea. Accordingly, the Government proved beyond a reasonable doubt that the Defendant committed the offense alleged in Count Three of the Third Superseding Indictment. The Court incorporates its analysis and conclusions with respect to Defendant's objections and contentions in Count Two which were made with respect to both Counts Two and Three.

---

[14] In the case of B.A., it is undisputed that the Canon camera was made in Japan, and SA Moore testified that the concealed recording device could not have been made entirely in the state of Tennessee. In the case of J.G., the EXIF data showed that the original device used to create the images was a Samsung device, which must have been manufactured in South Korea.

### D. Count Four: Possession of Material Containing Child Pornography

To show a violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2), the Government must prove beyond a reasonable doubt that:

    i. The Defendant knowingly possessed material that contained an image of child pornography;
    ii. The Defendant knew the material contained child pornography;
    iii. Either: the image of child pornography was produced using materials that had mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; or the image was transported in or affecting interstate commerce by any means; and,
    iv. At least one of those images depicted a child under the age of 12.

The evidence at trial overwhelmingly showed that the Defendant possessed material containing images of child sexual abuse and child pornography. The Defendant possessed hundreds of digital files containing child pornography as well as computers that contained data documenting explicit searches and downloads, digital storage devices, and circumstantial evidence showing the Defendant possessed all seven of the thumb drives admitted into evidence. The images that the Defendant created of J.G. alone satisfy the elements of the offense, not including the hundreds of images of Eastern European or Russian origin.[15] Accordingly, the Government has proved beyond a reasonable doubt that the Defendant committed the offense alleged in Count Four of the Third Superseding Indictment.

At the conclusion of the trial, the Defendant argued that the Government did not prove that he possessed "material" containing images of child pornography. He argues that the computers, discs, and thumb drives cannot be considered "material" because the relevant statute, 18 U.S.C. § 2252A(a)(5)(B), lists "other material" disjunctively, and consequently, the Government cannot

---

[15] SA Moore testified that many of the images entered into evidence were also contained in the National Center for Missing and Exploited Children database of known child pornography. In particular, there were images of an identified Russian series called KDV. [Doc. 140 at 170-172].

rely on anything specifically listed in the statute as "material." The Defendant is mistaken. The list in § 2252A is a non-exhaustive descriptive list of the kinds of material that can contain child pornography. The list is broad and demonstrates the range of things that may be considered "material." A plain reading of the statute fairly incorporates the items the Court admitted as exhibits with respect to this charge. As per the Third Superseding Indictment, the Defendant was on notice that he was charged with possessing material containing child sexual abuse and/or child pornography.

Even if the Court were to apply defense counsel's restrictive reading of the statute, the list does not include thumb drives, computers, or computer files, which the Defendant was shown to have possessed. Those items can be considered "material" containing images of child pornography. *See United States v. Knowlton*, 993 F.3d 354, 358 (5th Cir. 2021) (stating a computer file is material containing child pornography because it is a medium that contains images of child pornography).

### E. Count Five: Penalties for Registered Sex Offenders

To show a violation of 18 U.S.C. § 2260A, the Government must prove beyond a reasonable doubt that:

> i. The Defendant committed exploitation of a child, in violation Title 18 U.S.C. § 2251(a), as charged in Count Three of the Indictment, that is, the offense involving J.G.; and,
> ii. That at the time the Defendant committed a felony offense involving a minor, the defendant was required to register as a sex offender under the state laws of Tennessee.

The evidence at trial showed that the Defendant was originally placed on the sex offender registry in 2002, and that he was on the registry continuously through the time frame alleged in Count Three. As the Government proved the offense conduct as to Count Three, they have also proved beyond a reasonable doubt that the Defendant committed the offense alleged in Count Five

of the Third Superseding Indictment.

### III. CONCLUSION

These are findings of fact and conclusions of law found by the Court.

**SO ORDERED.**

**/s/    *Charles E. Atchley, Jr.***
**CHARLES E. ATCHLEY JR.**
**UNITED STATES DISTRICT JUDGE**